R.W. JONES v. THE CITY OF GREENSBORO, PAUL B. CALHOUN, THE
   GREENSBORO POLICE DEPARTMENT, S.H. "SAM" BRIGGS, L.W.
   WRENN, R.E. APPLE, AND THE GREENSBORO COLISEUM COMPLEX

No. 8018SC728

(Filed 5 May 1981)

1. **Limitation of Actions § 4.1– action to recover for torts – one-year statute of
   limitations applicable**

   Plaintiff's claims for false arrest, false imprisonment, assault, and libel
   were all barred by the one-year statute of limitations, G.S. 1-54, since these
   claims against defendant were commenced on 3 April 1975, and the inci-
   dents giving rise to these alleged claims occurred on 10 February 1974, more
   than one year earlier; moreover, there was no merit to plaintiff's argument
   that the appropriate statute of limitations was the two-year statute, G.S.
   1-53, since that statute does not apply to tort actions, nor was G.S. 1-539.15,
   which does provide for a two-year statute of limitations on claims against
   municipalities, applicable, since that statute did not become effective until
   after the incidents giving rise to plaintiff's action occurred and after plain-
   tiff's action had been commenced.

2. **Conspiracy § 2– conspiracy to commit torts – summary judgment proper**

   Plaintiff could not use the same alleged acts to form both the basis of a
   claim for conspiracy to commit certain torts and the basis of claims for those
   torts; therefore, since the trial court allowed plaintiff to maintain her other
   claims, except those barred by the statute of limitations or by absolute
   privilege, the trial court properly entered summary judgment for defend-
   ants on plaintiff's claim for conspiracy.

3. **Libel and Slander § 11– libel alleged in warrant – absolute privilege**

   An absolute privilege attached to the warrant charging plaintiff with
   refusing to obey an order of a police officer to move her vehicle so that
   plaintiff's alleged claim for libel because of the warrant was barred by such
   privilege, since a "judicial proceeding" encompassed the warrant from the
   time of its issuance through plaintiff's trial which ended in nonsuit.

4. **Malicious Prosecution § 1– elements of cause of action**

   In order to recover in an action for malicious prosecution, the plaintiff
   must establish that defendant instituted or caused to be instituted against
   him a criminal proceeding with malice and without probable cause, and that
   such proceeding has been terminated in the plaintiff's favor; moreover, an
   action for malicious prosecution must be based upon valid process, and if a
   warrant does not accurately and clearly allege all the constituent elements
   of an offense, the warrant is invalid and cannot be used as the basis for a
   malicious prosecution action.

5. **Process § 18– abuse of process**

   To recover in an action for abuse of process, the plaintiff must establish
   the existence of an ulterior purpose on the part of defendant, and an act in
   the use of the process which is not proper in the regular prosecution of the
   proceeding.

**6. Malicious Prosecution § 13.1– invalid warrant – insufficiency of evidence of malicious prosecution**

Evidence presented by plaintiff was insufficient to require submission to the jury of the claim for malicious prosecution where the first warrant issued against plaintiff did not accurately and clearly allege all the constituent elements of an offense, was therefore invalid, and could not support an action for malicious prosecution.

**7. Process § 19– abuse of process – insufficiency of evidence**

Evidence presented by plaintiff was insufficient to require submission to the jury of the claim for abuse of process where plaintiff presented no evidence upon which an inference could be drawn as to either ulterior purpose on the part of defendant police officer or the City of Greensboro or any improper act by them in the use of either of two warrants in the course of plaintiff's prosecution.

**8. Trial § 32.1– directed verdict – jury instruction**

There was no merit to plaintiff's contention that the trial court erred in instructing the jury at the close of plaintiff's evidence that it had allowed certain of defendants' motions for a directed verdict.

**9. Trial § 9.1– court's questioning of witnesses – no error**

In an action to recover damages arising out of plaintiff's alleged refusal to move her car when instructed to do so by defendant police officers, plaintiff was not prejudiced where the trial court directed questions to two of the defendants concerning the flow of traffic in the parking lot in question and concerning whether defendants had told plaintiff to move her car, since the questions asked by the court were for the purpose of clarifying the testimony of the witnesses, and the testimony elicited in response was relevant to the matters in issue.

**10. Malicious Prosecution § 13.3– malice – sufficiency of evidence**

In an action for malicious prosecution arising from plaintiff's arrest for her alleged refusal to follow orders by defendant police officers to move her car, evidence was sufficient to raise questions for the jury to determine regarding the existence of malice, either actual or imputed, and the existence of the other essential elements of malicious prosecution, and the trial court properly refused to direct verdict for plaintiff where the evidence tended to show that one defendant was the only officer present at the court hearing on the criminal charges arising out of the incident; at the 3 April 1974 hearing, the first warrant was quashed "for some technicality," and the district attorney instructed the officer on how the warrant should have been drawn; the officer then went to the magistrate's office and had the second warrant drawn in accordance with the instructions; the officer brought it back to the courtroom and served it upon plaintiff; and the officer testified at the 26 June 1974 trial on the second warrant, after which the trial judge dismissed the case.

**11. Municipal Corporations § 9.1– police employed in part-time job – misrepresentation of authority**

The trial court erred in dismissing plaintiff's claim for relief for failure to state a claim upon which relief could be granted where plaintiff alleged

Jones v. City of Greensboro

that police officers were permitted to wear the uniform of the city police department while engaged in part-time jobs with various businesses within the city and they thereby misrepresented to the public a continuation of the authority vested in an on-duty police officer to an off-duty police officer, that defendants city and chief of police should be restrained from authorizing or permitting employees to wear the uniform of the police department while engaged in such part-time jobs, and that as a result of the misrepresentation and the misuse of police powers on private property plaintiff had suffered actual damages; and plaintiff's allegations were therefore sufficient to state a claim for relief under 42 U.S.C. § 1983 against defendant police officers, police chief, and city.

APPEAL by plaintiff from *Long, Judge.* Judgment entered 12 March 1980 in Superior Court, GUILFORD County. Heard in the Court of Appeals 12 February 1981.

This is a civil action wherein plaintiff seeks to recover damages from defendants arising out of an incident occurring at the Greensboro Coliseum in Greensboro, North Carolina on 10 February 1974. In her verified complaint filed 3 April 1975, plaintiff made allegations which, except where quoted, are summarized as follows:

On 10 February 1974, at approximately 1:30 p.m., defendants R.E. Apple and S.H. Briggs, both citizens and residents of Guilford County who were employed as police officers of defendant Greensboro Police Department during their working hours, were engaged in the business of defendant City of Greensboro and its wholly owned subsidiary, defendant Greensboro Coliseum Complex, as its "agents, servants, and employees ... acting within the course and scope of such agency, servantship, or employment" as "parking lot attendants" at the Greensboro Coliseum during their off-duty hours. Plaintiff, her husband, and their seven-year-old son were proceeding to the Coliseum building at that time to attend a circus performance when they were "accosted" by defendants Apple and Briggs. Plaintiff was asked to move an automobile which was parked in "an unrestricted parking area" of the Coliseum parking lot, but she refused, and defendants Apple and Briggs then advised her that if she did not move the car, the car would be towed away. None of the defendants had seen plaintiff operating the vehicle. Plaintiff did not move the car and proceeded toward the Coliseum building with her family. Defendants Apple and Briggs then "conspired" to "bodily seize, ... bodily assault, ... falsely arrest, ... libel, ... falsely imprison, ...

maliciously prosecute, and ... abuse process to the detriment" of plaintiff, and then defendants Apple and Briggs "bodily seized and assaulted" plaintiff by "dragging her along, at a speed so much faster than she normally walks that her feet barely touched the ground" to a "City of Greensboro Police car" parked on the Coliseum grounds. Plaintiff was placed in the police car, "where she was imprisoned for an extended period" while another police car was summoned, and then defendants Apple and Briggs had plaintiff taken to defendant Greensboro Police Department. Upon plaintiff's arrival there, defendant L.W. Wrenn, a citizen and resident of Guilford County who was employed as a police officer of defendant Greensboro Police Department, and who was engaged in the business of defendants City of Greensboro and Paul B. Calhoun, Chief of Police of the Greensboro Police Department, as "an agent, servant and employee" of said defendants and was acting "within the course and scope of such agency, servantship, and employment," "conspired" with defendants Apple and Briggs to issue a warrant against plaintiff in furtherance of their "conspiracy" as previously described. This warrant, "alleging purported acts to which defendant Wrenn had no knowledge," stated in pertinent part that "on or about the 10th day of February, 1974," plaintiff "did unlawfully, wilfully, Fail [sic] and refuse to move her vehicle she was operating, after having been ordered to do so, by R.E. Apple and S.H. Briggs of the Greensboro Police Department, ..." Defendant Wrenn "falsely and wilfully" signed the warrant and "arrested plaintiff without a warrant and without probable cause."

Plaintiff further alleged that at the trial of the case, the warrant signed by defendant Wrenn was quashed, and that defendants "then conspired to continue the campaign of false arrest, libel, false imprisonment, to abuse process, and to further the process of malicious prosecution against the plaintiff" by causing a new warrant to be issued upon the statement of defendant Briggs. This second warrant in pertinent part stated that plaintiff

> did unlawfully, wilfully, fail and refuse to comply with a lawful order of R.E. Apple and S.H. Briggs, both of whom are law enforcement officers of the Greensboro Police Department, in that she refused to move the vehicle she was operating after having been ordered to do so by the above

officers. The order related to the control of traffic and the above officers are invested by law with authority to direct control or regulate traffic, ...

Defendant Briggs then "used his position as an employee with the Greensboro Police Department ... to enlist the aid" of defendants Apple, Wrenn, City of Greensboro, Greensboro Police Department, and Chief of Police Calhoun to "falsely arrest [plaintiff], maliciously and falsely imprison [plaintiff], and maliciously and falsely have the warrants issued" against plaintiff, and "to continue the malicious and false prosecution of [plaintiff] after the first warrant was quashed." These defendants "conspired together to further unlawfully assault, arrest, libel, imprison, and maliciously prosecute the plaintiff." When the second warrant was tried, plaintiff pleaded not guilty, and the case was "non-suited" by the trial judge.

Plaintiff also alleged that she was lawfully on the premises of the Greensboro Coliseum Complex as a "paid invitee," and that she has done all required of her under the Charter of defendant City of Greensboro to provide notice to the city of her claim. In addition, plaintiff alleged that defendants Apple and Briggs were not engaged in the business of defendant Greensboro Police Department at the time of the 10 February 1974 incident, and that if they were, they were not vested with the authority to order the movement of a vehicle by plaintiff. Plaintiff averred that as a result of defendants' actions, she has "suffered damages including the expenses of counsel, anxiety, and mental anguish, loss of time from her place of employment, embarassment, humiliation, mortification, and damage to plaintiff's reputation and standing in the community."

Based on the foregoing allegations, plaintiff undertook to allege the following eleven claims for relief:

As a proximate result of the false arrest of the plaintiff by defendants, plaintiff has suffered actual damages in the amount of $100,000. Defendants should be compelled to pay $100,000 as punitive damages for this false arrest.

PLAINTIFF, COMPLAINING OF THE DEFEND-ANTS AS A SECOND CAUSE OF ACTION, ALLEGES:

. . .

As a proximate result of the false imprisonment of the plaintiff by defendants, plaintiff has suffered actual damages in the amount of $100,000. Defendants should be compelled to pay $100,000 as punitive damages for this false imprisonment.

PLAINTIFF, COMPLAINING OF THE DEFENDANTS AS A THIRD CAUSE OF ACTION, ALLEGES:

. . .

As a proximate result of the malicious prosecution of the plaintiff through quashing of the first warrant by the defendants, plaintiff has suffered actual damages in the amount of $100,000. Defendants should be compelled to pay $100,000 as punitive damages for this malicious prosecution.

PLAINTIFF, COMPLAINING OF THE DEFENDANTS AS A FOURTH CAUSE OF ACTION, ALLEGES:

. . .

As a proximate result of the continued malicious prosecution of plaintiff by defendants after the original warrant had been quashed, plaintiff has suffered actual damages in the amount of $100,000. Defendants should be compelled to pay $100,000 as punitive damages for this continued malicious prosecution.

PLAINTIFF, COMPLAINING OF THE DEFENDANTS AS A FIFTH CAUSE OF ACTION, ALLEGES:

. . .

As a proximate result of the conspiracy of the defendants against plaintiff, plaintiff has suffered actual damages in the amount of $100,000. Defendants should be compelled to pay $100,000 as actual damages for this conspiracy against plaintiff.

PLAINTIFF, COMPLAINING OF THE DEFENDANTS AS A SIXTH CAUSE OF ACTION, ALLEGES:

. . .

As a result of the assault by defendants on plaintiff as herein alleged, plaintiff has suffered $100,000 actual dam-

ages. Defendants should be compelled to pay $100,000 as actual damages for this assault on plaintiff.

PLAINTIFF, COMPLAINING OF THE DEFENDANTS AS A SEVENTH CAUSE OF ACTION, ALLEGES:

. . .

As a result of the libel of the first warrant issued against plaintiff by defendants, plaintiff has suffered $100,000 actual damages. Defendants should be compelled to pay $100,000 as actual damages for this libel of the first warrant.

PLAINTIFF, COMPLAINING OF THE DEFENDANTS AS AN EIGHTH CAUSE OF ACTION, ALLEGES:

. . .

As a result of the libel of the second warrant issued against plaintiff by defendants, plaintiff has suffered $100,000 actual damages. Defendants should be compelled to pay $100,000 as actual damages for this libel of the second warrant.

PLAINTIFF, COMPLAINING OF THE DEFENDANTS AS A NINTH CAUSE OF ACTION, ALLEGES:

. . .

Plaintiff is informed and believes and, therefore, alleges that defendants City of Greensboro and Paul B. Calhoun, as Chief of the Greensboro Police Department, knowingly and willingly encouraged or permitted persons employed by the Greensboro Police Department to wear the uniform of the Greensboro Police Department while engaged in part-time jobs with various businesses within the City of Greensboro, specifically the Greensboro Coliseum Complex, a wholly owned subsidiary of the City of Greensboro, and to misrepresent to the public a continuation of the authority vested in an on-duty police officer to extend to an off-duty police officer.

Defendants City of Greensboro and Paul B. Calhoun, as Chief of the Greensboro Police Department, should be permanently restrained and enjoined from authorizing or permitting employees of the Greensboro Police Department

from wearing the uniform of the Greensboro Police Department while employed in part-time jobs and through misrepresenting to the public a continuation of their special police powers when they are, in fact, not entitled to an aura of special authority in other jobs.

As a result of the misrepresentation, and the misuse of police powers on private property, plaintiff has suffered actual damages in the amount of $100,000. Defendants should be compelled to pay $100,000 as actual damages for this misrepresentation and misuse of police powers on private property.

PLAINTIFF, COMPLAINING OF THE DEFENDANTS AS A TENTH CAUSE OF ACTION, ALLEGES:

. . .

As a result of the abuse of process by defendants the first time through the quashing of the first warrant, plaintiff has suffered $100,000 actual damages. Defendants should be compelled to pay $100,000 as actual damages for this first abuse of process.

PLAINTIFF, COMPLAINING OF THE DEFENDANTS AS AN ELEVENTH CAUSE OF ACTION, ALLEGES:

. . .

As a result of the abuse of process by defendants the second time following the quashing of the first warrant, plaintiff has suffered $100,000 actual damages. Defendants should be compelled to pay $100,000 as actual damages for this second abuse of process.

. . .

Defendants City of Greensboro, Paul B. Calhoun, S.H. Briggs, L.W. Wrenn, and R.E. Apple answered 3 June 1975, admitting that the Greensboro Coliseum Complex is wholly owned and operated by the City of Greensboro, and that at all times alleged in the complaint Briggs, Apple, and Wrenn were employed by the City of Greensboro to provide security and direct traffic at the Greensboro Coliseum Complex and were acting within the scope of that employment. These defendants

also admitted the presence of plaintiff in the parking lot of the Coliseum on the date in question, plaintiff's arrest and escort to the Greensboro Police Department, the existence of the two warrants, and the result of the two trials, but denied the other material allegations of the complaint and further alleged that (1) defendants Greensboro Police Department and Greensboro Coliseum Complex are component parts of defendant City of Greensboro and as such lack the capacity to be sued; (2) if the acts alleged in the complaint did occur, they occurred in the exercise of a governmental as opposed to a proprietary function of defendant City of Greensboro and thus the City is clothed with immunity as to such acts; (3) any arrest or detainment of plaintiff was lawful; (4) plaintiff failed to present her alleged claim to the City Council of defendant City of Greensboro as required by the provisions of the city charter; and (5) the complaint fails to state a claim upon which relief can be granted. In an amendment to their answer, filed 17 February 1977, defendants alleged that any right of action based upon plaintiff's first, second, fifth, sixth, seventh, ninth, and tenth claims for relief were barred by the one-year statute of limitation, G.S. §§ 1-54(1) and (3), and that in regard to the claims for libel, any words alleged to have been published were absolutely privileged, or in the alternative, qualifiedly privileged.

On 8 April 1977, plaintiff filed interrogatories addressed to defendants Apple, Briggs, Wrenn, City of Greensboro, Calhoun, and Greensboro Coliseum Complex. After obtaining an extension of time in which to answer the interrogatories on 9 May 1977, defendants made a motion to dismiss and for judgment on the pleadings, and, in the alternative, for summary judgment with respect to claims for relief nos. 1, 2, 5, 6, 7, 8, 9, 10, and 11 on 6 June 1977. In support of this motion, defendants offered plaintiff's complaint and defendants' answer as amended. Defendants also moved for a protective order on 6 June 1977, seeking to postpone the date upon which defendants would be required to answer plaintiff's interrogatories until after the hearing on defendants' motion to dismiss and for judgment on the pleadings and in the alternative for summary judgment. Defendants contended that if that motion was granted in whole or in part, it would render many of the interrogatories irrelevant to the litigation.

Plaintiff moved to amend her complaint on 30 June 1977 in

order to strike several claims for relief and to expand upon the allegations of conspiracy. Defendants responded in opposition to the motion on 14 July 1977, claiming that the purpose of the amendment was to evade the statute of limitations defense raised in defendants' answer.

On 24 March 1978, the court in separate orders allowed defendants' motion for a protective order, denied plaintiff's motion to amend her complaint, and entered summary judgment for all defendants on claims for relief nos. 1, 2, 5, 6, 7, 8, and 9 while denying summary judgment on claims for relief nos. 10 and 11. Thereafter, on 25 April 1978, defendants Apple, Briggs, Wrenn, City of Greensboro, Calhoun, and Greensboro Coliseum Complex filed answers to plaintiff's interrogatories, which, among other things, indicated the following: Defendant Apple did advise plaintiff that she would be arrested if the vehicle was not moved; defendants Apple and Briggs, in accordance with customary practice, were wearing their police uniforms while working in the Coliseum parking lot on 10 February 1974; and defendant Wrenn was acting upon information given him by Apple and Briggs when he signed and issued the first warrant.

Defendants Calhoun, Greensboro Police Department, and Greensboro Coliseum Complex moved for summary judgment on the remaining claims against them on 1 November 1979, on the grounds that Calhoun took no part in any acts alleged by plaintiff and that the Greensboro Police Department and the Greensboro Coliseum Complex lacked the capacity to be sued, since they were component parts of the City of Greensboro. The court granted this motion on 6 March 1980. Prior to the "convening of the jury for trial," plaintiff made a second motion to amend her complaint which was also denied.

The case proceeded to trial on plaintiff's third, fourth, tenth, and eleventh claims for relief as to defendants Apple, Briggs, Wrenn, and City of Greensboro. At the close of plaintiff's evidence, the following occurred: Defendants Apple, Briggs, Wrenn, and City of Greensboro moved for a directed verdict in their favor on plaintiff's third, tenth, and eleventh claims for relief, which the court allowed; defendant Wrenn moved for a directed verdict in his favor with respect to plaintiff's fourth claim, which was allowed; and defendants Apple, Briggs, and City of Greensboro moved for a directed verdict in their favor on

plaintiff's fourth claim, which the court denied. Defendants Apple, Briggs, and City of Greensboro then presented evidence with respect to the fourth claim, the only claim remaining in the case. Thereafter, plaintiff offered rebuttal evidence tending to corroborate her earlier testimony as to the events of 10 February 1974. Defendants Apple, Briggs, and City of Greensboro renewed their motion for a directed verdict on plaintiff's fourth claim for relief, and plaintiff moved for a directed verdict, or in the alternative for peremptory instructions on the elements of malicious prosecution and that the case be submitted to the jury on the issue of punitive damages. The court denied both motions. Defendants then offered rebuttal evidence. At the close of all the evidence, the parties renewed their previous motions, and the court again denied them.

Upon stipulation that defendants Apple and Briggs were acting within the scope of their employment with defendant City of Greensboro, the following issues were submitted to the jury and answered as indicated:

1. Did the defendant, S.H. Briggs, maliciously prosecute the plaintiff, Rosa W. Jones, by a warrant issued on April 3, 1974?

ANSWER: No.

2. Did the defendant, R.E. Apple, maliciously prosecute the plaintiff, Rosa W. Jones, by a warrant issued on April 3, 1974?

ANSWER: No.

3. What amount of actual damages, if any, is the plaintiff entitled to recover of the defendants?

ANSWER: $

4. What amount of punitive damages, if any, is the plaintiff entitled to recover:

(a) From the defendant Briggs?   $

(b) From the defendant Apple?   $

From judgments for all defendants on all claims, as set out above, plaintiff appealed.

*Max D. Ballinger, for the plaintiff appellant.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by Joseph R. Beatty, for the defendant appellees.*

HEDRICK, Judge.

Plaintiff first assigns error to the order allowing defendants' motion for summary judgment with respect to plaintiff's claims for relief nos. 1, 2, 5, 6, 7, 8, and 9.

[1] G.S. § 1-54, the one-year statute of limitations, in pertinent part provides:

Within one year an action or proceeding —

(3) For libel, slander, assault, battery, or false imprisonment.

The record before us demonstrates, as did the record before the trial court at the time of the hearing on defendants' motion to dismiss and for judgment on the pleadings and, in the alternative, for summary judgment, that plaintiff's alleged claims for false arrest (first claim for relief), false imprisonment (second claim for relief), assault (sixth claim for relief), and libel of the first warrant (seventh claim for relief) were all barred by the one-year statute of limitations, G.S. § 1-54, since these alleged claims against defendants were commenced on 3 April 1975, and the incidents giving rise to these alleged claims occurred on 10 February 1974, more than one year earlier.

Plaintiff contends, however, that a longer statute of limitations controls in the present case, apparently with respect to defendant City of Greensboro. Plaintiff argues that the appropriate statute of limitations is the two-year statute, G.S. § 1-53, which provides that "[a]ll claims against counties, cities and towns of this State" must be brought within two years after the "maturity of such claims." Yet, plaintiff concedes that her position is contrary to past decisions in this State, most notably *Dennis v. City of Albemarle,* 242 N.C. 263, 87 S.E. 2d 561 (1955), which hold that G.S. § 1-53 does not apply to tort actions. In support of her argument, plaintiff cites G.S. § 1-539.15, which does provide for a two year statute of limitations in claims against municipalities, including claims in tort; this statute, however, did not become effective until 1 October 1975, *after* the incidents giving rise to plaintiff's action occurred and indeed after plaintiff's action had been commenced. *See* 1975 N.C. Sess.

Laws, Ch. 361, § 3. G.S. § 1-539.15 is thus not controlling. We see no reason under the circumstances of this case to reach a different conclusion than the court in *Dennis v. City of Albemarle, supra*. Plaintiff also argues that certain provisions of the Charter of the City of Greensboro relating to notice and to maintenance of suits against the city dictate a longer limitations period; the Charter, however, provides that these provisions should not be construed to prevent any statute of limitations from commencing to run at the time the claim accrued, or to interfere with the running of any statute of limitations. Plaintiff's contentions as to a longer statute of limitations are therefore meritless.

[2] Plaintiff's fifth claim for relief, conspiracy, would not be barred by the one-year statute of limitations, since the claim alleges a continuing conspiracy on the part of defendants up to the time the trial on the second warrant was "nonsuited" on 26 June 1974, less than one year before plaintiff filed her complaint on 3 April 1975. Plaintiff would nevertheless be precluded from maintaining this claim.

In *Daniel Boone Complex, Inc. v. Furst*, 43 N.C. App. 95, 258 S.E. 2d 379 (1979), *disc. rev. denied*, 299 N.C. 120, 261 S.E. 2d 923 (1980), Judge Erwin, speaking for this Court, said:

> An action for civil conspiracy will lie when there is an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way, resulting in injury inflicted by one or more of the conspirators pursuant to a common scheme. [Citations omitted.]

*Id.*, at 103, 258 S.E. 2d at 386.

Such an action is not one for damages caused by the conspiracy itself, but is one for damages caused by acts committed pursuant to a formed conspiracy; the charge of conspiracy itself does nothing more than associate defendants together and perhaps liberalize the rules of evidence to the extent that under proper circumstances the acts and conduct of one defendant might be admissible against all. *Shope v. Boyer*, 268 N.C. 401, 150 S.E. 2d 771 (1966).

In the present case, plaintiff has alleged generally that defendants assaulted, falsely arrested, falsely imprisoned, libeled, and maliciously prosecuted her, as well as abusing pro-

cess with respect to her. In addition, plaintiff has alleged generally that defendants conspired to do all these things. Yet plaintiff uses the same alleged acts committed by defendants to support her conspiracy claim as she uses to support her claims for assault, false arrest, false imprisonment, libel, malicious prosecution, and abuse of process. Plaintiff cannot, however, use the same alleged acts to form both the basis of a claim for conspiracy to commit certain torts *and* the basis of claims for those torts. Since the trial court allowed plaintiff to maintain the other claims, except those barred by the statute of limitations, or by absolute privilege as hereinafter discussed, the court properly entered summary judgment for defendants on plaintiff's claim for conspiracy.

[3] Plaintiff's eighth claim for relief, libel of the second warrant, would not be barred by the one-year statute of limitations, since the second warrant was not issued until 3 April 1974, and plaintiff's complaint was filed 3 April 1975. The record discloses, however, an insurmountable bar to plaintiff's eighth claim, based upon absolute privilege. In actions for defamation, an absolute privilege attends communications made in the due course of judicial proceedings, *Mazzucco v. N.C. Board of Medical Examiners*, 31 N.C. App. 47, 228 S.E. 2d 529, *disc. rev. denied and appeal dismissed*, 291 N.C. 323, 230 S.E. 2d 676 (1976), and thus such communications will not support an action for libel. *Jarman v. Offutt*, 239 N.C. 468, 80 S.E. 2d 248 (1954). The term "judicial proceeding" is not restricted to trials in civil actions or criminal prosecutions, but includes every proceeding of a judicial nature before a competent court or before a tribunal or officer clothed with judicial or quasijudicial powers. *Jarman v. Offutt, supra*. Moreover, statements in pleadings and other papers filed in a "judicial proceeding" which are relevant or pertinent to the subject matter in controversy are cloaked with this absolute privilege. *Scott v. Statesville Plywood & Veneer Co.*, 240 N.C. 73, 81 S.E. 2d 146 (1954). In the present case, the record demonstrates that a "judicial proceeding" encompassed the second warrant from the time of its issuance through the trial ending in nonsuit, and clearly the statements in the warrant were relevant and pertinent to the subject matter in controversy. Thus, an absolute privilege attached to the warrant such that plaintiff's alleged claim for libel because of the second warrant was barred by such privilege.

Summary judgment for defendants with respect to plaintiff's first, second, fifth, sixth, seventh, and eighth claims for relief must therefore be affirmed. The propriety of summary judgment in defendants' favor on plaintiff's ninth claim for relief will be discussed elsewhere in this opinion.

Plaintiff's second assignment of error is set out in the record as follows: "The Court erred in allowing defendants' motion for a protective order in answering the plaintiff's interrogatories and in ruling on defendants' motion for summary judgment prior to compelling the defendants to answer the interrogatories." We fail to see, however, how the court could have committed prejudicial error by these actions. As indicated previously, summary judgment for all defendants with respect to plaintiff's claims for relief nos. 1, 2, 6, and 7 was based on the statute of limitations, while summary judgment for all defendants on plaintiff's eighth claim was based upon absolute privilege. The answers to the interrogatories, on the other hand, did not relate to the time of the commencement of the action or the occurrence of the events upon which these claims were based, nor did they relate to any matters regarding libel or absolute privilege. Summary judgment was also granted for defendants on plaintiff's fifth claim, and the answers to the interrogatories would not have shed any light on that claim. Plaintiff has failed to show any prejudicial error, and thus this assignment of error is without merit.

Plaintiff's third and fourth assignments of error relate to the denial of her motions to amend her complaint. A motion to amend is addressed to the discretion of the trial court, and the trial court's ruling thereon is not reviewable on appeal in the absence of a showing of abuse of discretion. G.S. § 1A-1, Rule 15(a); *Helena Chemical Co. v. Rivenbark*, 45 N.C. App. 517, 263 S.E. 2d 305 (1980); *Willow Mountain Corp. v. Parker*, 37 N.C. App. 718, 247 S.E. 2d 11, *disc. review denied*, 295 N.C. 738, 248 S.E. 2d 867 (1978). Plaintiff has shown no abuse of discretion on the part of the trial court in denying her motions to amend, and thus the court's rulings are not reviewable. This assignment of error is without merit.

Plaintiff's fifth assignment of error is set out in the record as follows: "The Court erred in allowing defendants' Paul B. Calhoun's, City of Greensboro's, and the Greensboro Coliseum

Complexes' [sic] motion for summary judgment as to all remaining causes of action." Plaintiff has not advanced any argument with respect to this assignment of error. It is therefore deemed abandoned. Rule 28(a), Rules of Appellate Procedure; *State v. Moore*, 301 N.C. 262, 271 S.E. 2d 242 (1980).

Plaintiff's sixth assignment of error is set out in the record as follows: "The Court erred in allowing defendants' motions for a directed verdict as to certain of plaintiff's causes of action at the close of plaintiff's evidence." The record discloses that plaintiff offered evidence in support of her alleged claims for relief nos. 3 (malicious prosecution with respect to the first warrant), 4 (malicious prosecution with respect to the second warrant), 10 (abuse of process with respect to the first warrant), and 11 (abuse of process with respect to the second warrant) with respect to defendants Apple, Briggs, Wrenn, and City of Greensboro. The evidence presented by plaintiff tended to show the following:

On 10 February 1974, plaintiff, a counselor employed by the Greensboro City Schools, had gone to the Greensboro Coliseum with her husband and son to see a circus scheduled to start at 2:00 p.m. Upon entering the Coliseum parking lot at approximately 1:30 p.m., plaintiff paid fifty cents for a ticket to park. No one told her where she could or could not park. Plaintiff parked her car in the "east section" or "right" of the parking lot, next to a white car. Several other cars were parked in the vicinity, while other people were parking "to the left." There was no one in the immediate area giving directions as to where to park and there were no signs that indicated plaintiff could not park there.

Plaintiff locked her car and fixed her hair while her husband and son got out and proceeded toward the Coliseum. The plaintiff got out and walked toward her husband and son. She noticed that they were talking to a uniformed officer, identified as defendant Briggs. Briggs asked plaintiff's husband to move the car, to which plaintiff's husband replied, "I'm not driving the car. She is." Briggs then said, "Well, it's going to be towed away," and plaintiff's husband replied, "Okay." Plaintiff's husband and son then "kind of moved on" and Briggs approached plaintiff and asked her if she was driving the car. Briggs told her that she needed to move the car. She replied that she

"didn't think" that she was going to move the car, and she asked who was in charge. Briggs answered, "Lieutenant Apple," and crossed over to the other side of the lot to confer with another officer, identified as defendant Apple. Apple "yelled back" at plaintiff in a "loud" voice, saying, "Move it."

Briggs returned and again informed plaintiff that she needed to move the car. Briggs stated that she had an "option," that she either move the vehicle or it would be towed and she would have to pay $15.00. Plaintiff replied, "Sir, I don't think I'm going to move the car today and you will have to tow it in." Plaintiff testified that the reasons for her refusal were that her family did not want to "miss the opening," and that she felt "rather than wreck somebody else's car in the parking lot, it was easier to let it stay there" until she could get to her husband to let him come move the car. Briggs did not tell her that she would be arrested if she did not move the car, or why he wanted the car moved.

Plaintiff continued to proceed toward the Coliseum, in order to talk with her husband about moving the car. Then she "felt these two hands" on her and she was "turned around" by Apple and Briggs. One of the officers said, "You're under arrest," to which plaintiff replied, "What for?" The officers then escorted plaintiff back through the parking lot, moving her at a pace "much faster than the ordinary pace." Plaintiff was being held under her armpits. Plaintiff asked if she could go tell her husband and son that she was being arrested, but the officers refused. Plaintiff was placed in the back of a police car parked on the west side of the parking lot "from fifteen to twenty minutes." While she was sitting in the police car, the officers looked at the contents of her purse. The officers refused to let plaintiff "pull the window down" to talk with her husband. A few minutes later, another officer, identified as defendant Wrenn, drove up, and plaintiff was transferred to Wrenn's vehicle. Plaintiff asked if they would read her "my rights," and one of the officers did so. Plaintiff was taken to the magistrate's office by Wrenn, where Wrenn gave a statement as to "what the situation was" and signed an affidavit. Plaintiff was then served with a warrant and was released from custody. Up until the time she was taken from the Coliseum parking lot to the magistrate's office in downtown Greensboro, plaintiff testified that she never saw anyone else move a car, any cars get towed,

or anyone else get "arrested."

Plaintiff's evidence further tended to show that following the events of 10 February 1974, plaintiff made a motion to quash the warrant on 6 March 1974, and the motion was allowed on 3 April 1974. While plaintiff was present at court on 3 April 1974, she was served with a second warrant, signed by Briggs. Plaintiff was brought to trial on the second warrant on 26 June 1974, but the case was "nonsuited." Calling the above-described events "humiliating and intimidating," plaintiff testified that there had been several "repercussions" from the incident, such as her son was now "frightened to death" of every police officer he saw, and that plaintiff was "worried" that her chances for promotion at work had been affected. At the close of plaintiff's evidence, the court directed a verdict for these four defendants on plaintiff's third, tenth, and eleventh claims, and for defendant Wrenn on plaintiff's fourth claim.

[4,5] In order to recover in an action for malicious prosecution, the plaintiff must establish that the defendant instituted or caused to be instituted against him a criminal proceeding (or, in certain instances, civil actions) with malice and without probable cause, and that such proceeding has been terminated in the plaintiff's favor. *Koury v. John Meyer of Norwich,* 44 N.C. App. 392, 261 S.E. 2d 217, *disc. rev. denied,* 299 N.C. 736, 267 S.E. 2d 662 (1980); *Denning v. Lee,* 35 N.C. App. 565, 241 S.E. 2d 706 (1978). An action for malicious prosecution must be based upon valid process, *Bassinov v. Finkle,* 261 N.C. 109, 134 S.E. 2d 130 (1964), and if a warrant does not accurately and clearly allege all the constituent elements of an offense, the warrant is invalid and cannot be used as the basis for a malicious prosecution action. *Hawkins v. Reynolds,* 236 N.C. 422, 72 S.E. 2d 874 (1952). To recover in an action for abuse of process, the plaintiff must establish (1) the existence of an ulterior purpose on the part of the defendant, and (2) an act in the use of the process which is not proper in the regular prosecution of the proceeding. *Barnette v. Woody,* 242 N.C. 424, 88 S.E. 2d 223 (1955).

[6,7] We are of the view that the evidence presented by plaintiff, when considered in the light most favorable to plaintiff, is insufficient to require submission to the jury of the claims for malicious prosecution and abuse of process with respect to the first warrant and for abuse of process with respect to the second

warrant, or to require submission to the jury of the claim for malicious prosecution based on the second warrant with respect to defendant Wrenn. The record demonstrates that the first warrant, issued 10 February 1974, did not accurately and clearly allege all the constituent elements of an offense, as evidenced by the court's granting plaintiff's motion to quash the warrant on 3 April 1974. Furthermore, we have examined the warrant which was quashed and conclude that it does not accurately and clearly allege the elements of an offense. The first warrant was therefore invalid and could not support an action for malicious prosecution. Also, plaintiff presented no evidence upon which an inference could be drawn as to either ulterior purpose on the part of defendants Apple, Briggs, Wrenn, and City of Greensboro or any improper act by them in the use of either warrant in the course of plaintiff's prosecution. In addition, the evidence clearly indicates that defendant Wrenn had nothing to do with the prosecution of plaintiff after the issuance of the first warrant. The trial court properly directed verdicts in favor of defendants Apple, Briggs, Wrenn, and City of Greensboro on plaintiff's claims nos. 3, 10, and 11, and in favor of defendant Wrenn on plaintiff's fourth claim. This assignment of error is without merit.

[8] Plaintiff next contends, based upon her seventh assignment of error, that the trial court erred in instructing the jury at the close of plaintiff's evidence that it had allowed certain of defendants' motions for a directed verdict. Plaintiff argues that such information is "not necessary for the jury to fully understand the proceedings before it" and to bring such information to the attention of the jury is "prejudicial." We, however, disagree, and find no prejudicial error in the court's comments, and this assignment of error will not be sustained.

[9] When counsel for defendants had concluded his direct examination of defendant Apple, the trial court directed further questions to Apple concerning the flow of traffic in the Coliseum parking lot and the effect of not parking in accordance with the plan used to park cars in the lot when there are consecutively scheduled events at the Coliseum. In addition, while defendant Briggs was on the stand as a defense witness, the court asked questions of Briggs concerning whether he and defendant Apple had told plaintiff "to move her car." These

questions by the court form the basis of plaintiff's eighth assignment of error. Plaintiff argues that the questions directed to Apple were "hypothetical questions" which "adjudicated defendant [Apple] an expert entitled to speak to hypothetical situations and have his opinion believed as an expert," and that the testimony of Apple in response to the questions was irrelevant. With respect to the questions directed to Briggs, plaintiff argues that Briggs' answers were "non-responsive" and should have been limited for "corroboration." As a result of the court's questions, plaintiff contends she was "prejudiced." We do not agree.

The questions asked by the court were for the purpose of clarifying the testimony of Apple and Briggs, and the testimony elicited in response was relevant to the matters in issue. We note that plaintiff was allowed in each instance to ask questions of the witness following the examination by the court. In our view, plaintiff has failed to show any prejudicial error in the court's questioning of Apple and Briggs, and this assignment of error is without merit.

[10] By her ninth, tenth, and eleventh assignments of error, plaintiff contends that the court erred in denying her motions as to defendants Apple, Briggs, and City of Greensboro for a directed verdict on plaintiff's fourth claim, and for peremptory instructions on the elements of malicious prosecution, including such an instruction on the issue of "malice imputed." We disagree. Defendants Apple, Briggs, and City of Greensboro offered evidence tending to show the following: Defendant Briggs was the only officer present at the court hearings on the criminal charges arising out of the incident. At the 3 April 1974 hearing, the first warrant was quashed "for some technicality" and the District Attorney instructed Briggs on how the warrant should have been drawn. Briggs then went to the magistrate's office and had the second warrant drawn in accordance with the instructions. Briggs brought it back to the courtroom and served it upon plaintiff. Briggs testified at the 26 June 1974 trial on the second warrant, after which the trial judge dismissed the case.

We are of the opinion that the foregoing evidence, together with any inferences raised in defendants' favor from plaintiff's evidence, is sufficient to raise questions for the jury to deter-

mine regarding the existence of malice, either actual or imputed, and the existence of the other essential elements of malicious prosecution. The court's rulings challenged by these assignments of error were therefore proper, and these assignments of error are without merit.

Plaintiff's twelfth assignment of error is addressed to the court's instructions to the jury. Based on this assignment of error, plaintiff argues (1) the court should have peremptorily instructed on each element of malicious prosecution; (2) the court's definition of "probable cause" should have referred to a "cautious man" instead of a "person of ordinary prudence"; (3) the court failed to charge that advice of counsel does not preclude recovery for plaintiff; (4) the court should have charged that defendants Apple and Briggs were "off-duty working as private citizens in the capacity of parking lot attendants;" (5) the court should have peremptorily charged that "the parking lot was private property owned by the city in its proprietary function," such that defendants Apple and Briggs were without authority to arrest plaintiff under G.S. § 20-114.1; (6) the court's definition of malice was "inaccurate and incomplete"; (7) the court should have charged that malice could be imputed from, and that damages could be based upon, the actions of defendants beginning 10 February 1974, and not 3 April 1974, when the warrant upon which the claim was based was issued; (8) the court should have repeated verbatim the instructions given with respect to the first issue when instructing upon the second issue; and (9) the court should not have repeated the erroneous instructions in response to a question from the jury, when the answer to the question asked did not require such repetition. We have examined the trial court's charge in light of plaintiff's contentions, and find that the charge, when considered contextually as a whole, is fair, correct, and adequate, and is free from prejudicial error. Plaintiff's twelfth assignment of error is without merit.

Plaintiff's thirteenth assignment of error, contending that the court erred in failing to set aside the verdict and in not entering judgment for plaintiff notwithstanding the verdict is meritless.

Finally, plaintiff contends that the court erred in entering summary judgment for all defendants on plaintiff's ninth claim

for relief. We note at the outset that the court considered only the pleadings in entering summary judgment for defendants with respect to this claim for relief, but defendants' motion was one for dismissal pursuant to Rule 12(b)(6), for judgment on the pleadings, and in the alternative for summary judgment. We therefore treat the court's order pursuant to defendants' motion, insofar as it dealt with plaintiff's ninth claim, as an order dismissing plaintiff's ninth claim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief could be granted.

[11] With respect to her ninth claim for relief, plaintiff argues that dismissal was improper because this claim, despite the fact that a specific reference to 42 U.S.C. § 1983 was not made, stated a claim for relief under that statute. Section 1983 at the time this suit was instituted, provided:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Municipalities have been held to be "persons" under 42 U.S.C. § 1983, such that they are amenable to suit under the statute. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978); *see also Owen v. City of Independence*, 445 U.S. 622, 63 L. Ed. 2d 673, 100 S. Ct. 1398, *rehearing denied,* — U.S. —, 64 L. Ed. 2d 850, 100 S. Ct. 2979 (1980). State courts have concurrent jurisdiction with federal courts to entertain actions under § 1983, and thus § 1983 claims can be instituted and maintained in the courts of this State. *Williams v. Greene*, 36 N.C. App. 80, 243 S.E. 2d 156, *disc. rev. denied and appeal dismissed*, 295 N.C. 471, 246 S.E. 2d 12 (1978).

In *Presnell v. Pell*, 298 N.C. 715, 260 S.E. 2d 611 (1979), the Supreme Court of this State (per Justice Exum) stated:

> A complaint is deemed sufficient to withstand a motion to dismiss under Rule 12(b)(6) where no insurmountable bar to recovery appears on the face of the complaint and the complaint's allegations give adequate notice of the nature

and extent of the claim. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970).

*Id.,* at 719, 260 S.E. 2d at 613. In addition, a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. *Presnell v. Pell, supra; Sutton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161 (1970). In testing the sufficiency of the claim, the complaint must be liberally construed, *Benton v. W.H. Weaver Construction Co.,* 28 N.C. App. 91, 220 S.E. 2d 417 (1975), and when the allegations give sufficient notice of the wrong of which plaintiff complains, the incorrect choice of the legal theory upon which the claim is bottomed should not result in dismissal if the allegations are sufficient to state a claim under some legal theory. *Stanback v. Stanback,* 297 N.C. 181, 254 S.E. 2d 611 (1979).

The above stated rules are no different for claims under § 1983. *See Slavin v. Curry,* 574 F. 2d 1256, *rehearing denied,* 583 F. 2d 779 (5th Cir., 1978); *Williams v. Vincent,* 508 F. 2d 541 (2d Cir. 1974); *Cruz v. Cardwell,* 486 F. 2d 550 (8th Cir. 1973); *Kauffman v. Moss,* 420 F. 2d 1270 (3d Cir. 1970), *cert. denied,* 400 U.S. 846, 27 L. Ed. 2d 84, 91 S. Ct. 93 (1970).

When the allegations in plaintiff's complaint are liberally construed in light of the foregoing rules of substance and procedure, we hold they are sufficient to state a claim for relief under 42 U.S.C. § 1983 against defendants Apple, Briggs, Wrenn, Calhoun, and City of Greensboro. Defendants Greensboro Police Department and Greensboro Coliseum Complex would not be amenable to suit under § 1983 since they are component parts of defendant City of Greensboro and as such lack the capacity to be sued. Thus, we hold the trial court erred in dismissing plaintiff's ninth claim for relief for failure to state a claim upon which relief could be granted with respect to defendants Apple, Briggs, Wrenn, Calhoun, and City of Greensboro.

The result is: Summary judgment for all defendants with respect to claims for relief nos. 1, 2, 5, 6, 7, and 8 is affirmed; summary judgment for defendants Calhoun, Greensboro Police Department, and Greensboro Coliseum Complex on the remaining claims for relief (except for plaintiff's ninth claim for relief with respect to Calhoun) is affirmed; judgment directing verdict in favor of defendants Apple, Briggs, Wrenn, and City of

Greensboro on claims for relief nos. 3, 10, and 11 is affirmed; no error in the trial with respect to the fourth claim for relief; judgment dismissing the ninth claim for relief as to defendants Apple, Briggs, Wrenn, Calhoun, and City of Greensboro is reversed and the cause is remanded to the Superior Court, Guilford County, for further proceedings.

Affirmed in part; no error in part; reversed and remanded in part.

Judges WEBB and HILL concur.