NORTH CAROLINA EASTERN MUNICIPAL POWER AGENCY, PLAINTIFF v. WAKE COUNTY, DEFENDANT

No. 9010SC262

(Filed 4 December 1990)

**Statutes § 1 (NCI3d) — taxation — assessment of public service company system property — act not revenue act — manner of enactment**

     Chapter 1052, 1987 Session Laws (Reg. Sess. 1988), entitled "AN ACT TO CORRECT THE DATES FOR PHASE-IN OF THE MODIFIED SYSTEM FOR ADJUSTING THE ASSESSMENT LEVEL OF PUBLIC SERVICE COMPANY SYSTEM PROPERTY," does not impose or authorize a tax and therefore is not within the

purview of N. C. Const. art. II, § 23, which requires revenue acts to be read and passed on three separate days.

**Am Jur 2d, State and Local Taxation §§ 8, 9.**

APPEAL by plaintiff from order entered 20 December 1989 by *Judge J. B. Allen, Jr.,* in WAKE County Superior Court. Heard in the Court of Appeals 26 September 1990.

On 4 May 1989, plaintiff filed an action against defendant seeking a refund of $1,214,211.00 in 1988 ad valorem taxes, plus $33,390.80 in interest. The complaint also challenged the constitutionality of 1987 N.C. Sess. Laws (Reg. Sess. 1988) c. 1052 (H.B. 2651), which allowed Division Five counties (including defendant) to reassess plaintiff's system property subject to ad valorem taxes in Wake County for 1988.

Plaintiff filed a motion for summary judgment on 31 July 1989. Defendant subsequently filed a motion to dismiss under Rule 12(b)(6) of the N.C. Rules of Civil Procedure and a motion for summary judgment. On 20 December 1989, the trial court entered its order *nunc pro tunc* 18 December 1989, granting defendant's motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Plaintiff appeals from this judgment.

*Poyner & Spruill, by David Dreifus and Mary Beth Johnston, for plaintiff-appellant.*

*Wake County Attorney Michael R. Ferrell and Assistant Wake County Attorney Shelley T. Eason for defendant-appellee.*

ORR, Judge.

The sole issue on appeal is whether the trial court erred in granting defendant's motion to dismiss under Rule 12(b)(6) of the N.C. Rules of Civil Procedure for failure to state a claim upon which relief can be granted. For the reasons below, we hold that the trial court did not err and affirm its judgment of 20 December 1989.

Under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (1983), the question is whether the complaint, liberally construed, states a claim upon which relief may be granted under any legal theory. *Jones v. City of Greensboro,* 51 N.C. App. 571, 593, 277 S.E.2d 562, 576 (1981)

(citations omitted). In deciding a motion under this rule, the trial court must treat the allegations of the complaint as true. *Azzolino v. Dingfelder*, 71 N.C. App. 289, 322 S.E.2d 567 (1984), *aff'd in part and rev'd in part*, 315 N.C. 103, 337 S.E.2d 528 (1985), *cert. denied*, 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986). Conclusions of law and unnecessary deductions of fact are not admitted for purposes of this rule. *Sutton v. Duke*, 277 N.C. 94, 176 S.E.2d 161 (1970).

A claim may be dismissed under Rule 12(b)(6) if there is no law to support the claim, if there is an absence of fact to make a good claim or if there is a disclosure of fact which will defeat the claim. *Robertson v. Boyd*, 88 N.C. App. 437, 441, 363 S.E.2d 672, 675 (1988) (citation omitted). To test the legal sufficiency of a complaint asserting constitutional issues, a party may move to dismiss under this rule. *See Town of Beech Mountain v. County of Watauga*, 91 N.C. App. 87, 370 S.E.2d 453 (1980), *aff'd*, 324 N.C. 409, 378 S.E.2d 780, *cert. denied*, 110 S.Ct. 365, 107 L.Ed.2d 351 (1989) (U.S.N.C., 6 Nov. 1989 No. 89-179) (affirming dismissal of a complaint asserting constitutional equal protection and privileges and immunities issues).

## I.

With these general principles in mind, we now turn to the facts and issues in the case before us. Before we discuss the constitutionality of the challenged statute, we must address the background of this litigation.

Plaintiff is a "public service company" organized under N.C. Gen. Stat. § 159B *et seq.*, and is subject to taxation on its system property under N.C. Gen. Stat. § 105-333 (1985). The Legislature authorized defendant and other counties to levy property taxes, including taxes on plaintiff's system property, according to the procedures in the Machinery Act (Chapter 105, Subchapter II). N.C. Gen. Stat. § 153A-149 (1987).

Counties reappraise real property every eight years. N.C. Gen. Stat. § 105-286 (1985). For these purposes, counties in North Carolina are divided into eight divisions, with each division having a different base year when its octennial revaluation of real property occurs. N.C. Gen. Stat. § 105-286(a) (1985). Defendant is in Division Five. Its last revaluation occurred in 1984; the next occurs in 1992. Although the issues in this litigation affect other divisions, our

discussion of the issues will be limited generally to Division Five counties and specifically, to defendant.

Under N.C. Gen. Stat. § 159B-27(a) (1987), municipally owned public utilities such as plaintiff make payments for system property to counties and cities "in lieu of property taxes." Under the statute, these payments are treated as property taxes.

The North Carolina Department of Revenue (hereinafter Revenue) appraises the true value of system property each year and then apportions the system property valuation among the local taxing units where the property is located. N.C. Gen. Stat. §§ 105-335(b), 338 and 339. The local taxing unit assesses the public utility system property at the certified valuation rate, applies the tax rate and collects that amount as it does property tax. N.C. Gen. Stat. § 105-341 (1985).

Generally, property in this state is assessed at 100% of its appraised (true) value. N.C. Gen. Stat. § 105-284(a). Some statutes, however, provide for assessment at different rates for special classes of property. These classes of property are not in issue.

Until 1 January 1987, N.C. Gen. Stat. § 105-342(c) allowed public utilities, such as plaintiff, to request county boards of commissioners to reduce assessed valuations for system property in the first year (base year) of the eight-year revaluation cycle, and in the third and seventh years following an eight-year revaluation. To receive a lower assessment, public utilities must show that locally appraised property was valued at 85% or less of its true value. Under those circumstances, the county commissioners could approve an assessment at less than 100% of Revenue's appraised value, thus eliminating any inequality in valuation for tax purposes between other real property and system property. When the county commissioners approved such reductions, they reported the reductions to Revenue, who would then apply the percentage reduction to its certified value for system property in that county in all following years until the public utility requested another reduction or the county conducted another eight-year revaluation. N.C. Gen. Stat. § 105-342(c)(1) (1985).

In 1985, the Legislature changed the above procedure for revaluing system property by rewriting N.C. Gen. Stat. § 105-284, effective 1 January 1987. This statute directed Revenue to determine if system property was appraised inequitably in any county by

conducting periodic assessment ratio studies of real property tax values. If Revenue found inequitable differences in valuations, it would automatically reduce system property tax values to compensate for these differences. Under the rewritten statute, the automatic revaluation for system property occurs in the first, fourth and seventh years of the county's eight-year revaluation cycle. The new statute also contained a rolling repeal date for the county Board of Commissioners reduction procedure, repealing it in each county on 1 January of the year in which Revenue was due to perform the sales assessment ratio studies. N.C. Gen. Stat. § 105-342(c).

By 1987, the Legislature realized that the phased repeal of the statute would produce a disproportionate effect on Division Five counties with revaluation cycles beginning in 1984. Under the old statute, defendant was eligible for third-year Board of Commissioner reductions during the 1987 tax year. They were again eligible for fourth-year reductions under the rewritten statute for the 1988 tax year. Therefore, in Division Five counties, utility companies could receive four reductions during the eight-year revaluation cycle instead of three reductions.

To prevent back-to-back reductions in Division Five counties, the Legislature enacted H.B. 2651 as 1987 N.C. Sess. Law (Reg. Sess. 1988) c. 1052 (hereinafter Chapter 1052), effective 1 January 1988. Chapter 1052 permitted a Division Five county, for the 1988 tax year (fourth year), to offset any amount of 1987 (third year) reduction received by a public utility under the old county board procedure. For example, if a public utility received a third-year reduction under the old procedure and a fourth-year reduction under the new procedure, the county could add the amount of the third-year reduction to the appraised value of the property for the fourth year.

The practical application of this produced the following result in the case *sub judice*. The value of plaintiff's property in Wake County in 1987 was $796,977,354.00. Plaintiff received a 21.16% reduction in the appraised value which resulted in a $168,640,408.00 reduction in the value of the property subject to taxes. Therefore, plaintiff paid 1987 taxes on the value of $628,336,946.00.

In 1988, Revenue appraised plaintiff's property at $841,979,244.00. Plaintiff received a reduction in the appraised value of 23.39%, or $196,938,945.00. Plaintiff paid 1988 taxes on the value of $645,040,299.00.

Pursuant to Chapter 1052, defendant assessed an additional amount of $1,214,211.00 in ad valorem taxes on plaintiff for the 1988 tax year. This was calculated by adding the amount of plaintiff's 1987 reduction (third year) of $168,640,408.00, to the 1988 value (after the fourth-year reduction) of $645,040,299.00. Plaintiff paid the additional tax plus $33,390.80 in interest, and subsequently requested a refund from defendant. Defendant denied this request on 21 April 1989. Plaintiff then filed this action challenging the constitutionality of Chapter 1052.

## II.

Plaintiff alleges that Chapter 1052 violates two provisions of the North Carolina Constitution: Article II § 23 and Article I § 16.

### a. *Article II § 23*

Under Article II § 23 of the North Carolina Constitution,

> No law shall be enacted to raise money on the credit of the State, or to pledge the faith of the State directly or indirectly for the payment of any debt, or to impose any tax upon the people of the State, or to allow the counties, cities, or towns to do so, unless the bill for the purpose shall have been read three several times in each house of the General Assembly and passed three several readings, which readings shall have been on three different days, and shall have been agreed to by each house respectively, and unless the yeas and nays on the second and third readings of the bill shall have been entered on the journal.

Both plaintiff and defendant agree that Article II § 23 applies, *inter alia*, to laws enacted for the purpose of imposing a tax. Defendant maintains that Chapter 1052 neither imposes a tax nor authorizes its imposition, and therefore, Article II § 23 does not apply. We agree and hold that Chapter 1052 does not impose or authorize a tax, and therefore, Article II § 23 does not apply.

We have reviewed the briefs of record, the cases cited therein and the arguments of the parties before this Court concerning this issue. There is no doubt that the effect of Chapter 1052 imposed a greater tax burden on plaintiff for 1988. However, Article II § 23 focuses on the *purpose* of the statute (to impose a tax) and not the *result* of the statute (an increased tax burden).

It is well-established law in this state that when determining the constitutional validity of a statute, "if the meaning is clear from reading the words of the Constitution, we should not search for a meaning elsewhere." *State ex rel. Martin v. Melott*, 320 N.C. 518, 520, 359 S.E.2d 783, 785 (1987) (citations omitted). We find that the language of Article II § 23 is clear in that it applies to statutes enacted to impose a tax.

More importantly, we find that the language of Chapter 1052 is clear. It is entitled, "AN ACT TO CORRECT THE DATES FOR PHASE-IN OF THE MODIFIED SYSTEM FOR ADJUSTING THE ASSESSMENT LEVEL OF PUBLIC SERVICE COMPANY SYSTEM PROPERTY." 1987 N.C. Sess. Laws (Reg. Sess. 1988) c. 1052. Sections 1 and 2 describe the manner in which the reappraisal or revaluation of system property will occur in the applicable divisions, as well as the effective dates for such revaluation. There is nothing in Chapter 1052 which indicates that its purpose is to raise revenue or to impose taxes. The fact that the effect of this chapter increased defendant's tax burden in 1988 is of no import to the stated purpose of the statute.

Moreover, we find that *Hart v. Commissioners*, 192 N.C. 161, 134 S.E. 403 (1926), supports our holding that Chapter 1052 does not impose a tax and therefore is not within the purview of Article II § 23 of the North Carolina Constitution. In *Hart*, a case upholding an act authorizing the revaluation of property, our Supreme Court stated: " 'Revenue bills, as defined by law, are those that levy taxes in the strict sense of the word and are not bills for other purposes which may incidentally create revenue.' " *Id.* at 164, 134 S.E. at 404, *citing*, 1 Story Constitution, § 880; *Twin City National Bank v. Nebeker*, 167 U.S. 196; 42 L.Ed., 134; *Millard v. Roberts*, 202 U.S. 429; 50 L.Ed., 1090; *Anderson v. Ritterbusch*, 98 Pac., 1002; 26 R. C. L., § 55; *Northern Counties Investment Trust v. Sears*, 35 L. R. A. (O. S.). The *Hart* Court found that the act in question was a machinery act and not a revenue act, and as such, need not comply with Article II § 14 of the 1868 Constitution (which is substantially the same as Article II § 23).

Plaintiff argues that *Hart* is inapplicable to the present case because *Hart* did not involve a retroactive revocation of a tax reduction authorized and taken in the previous year. We disagree. If the act is not a revenue or tax act from the outset, it does not matter if the act is retroactive or prospective in its application.

Further, we are not convinced that Chapter 1052 in the present case is, in fact, a retroactive act.

b. *Article I § 16*

Because we hold that Chapter 1052 is not a revenue or taxing act under Article II § 23, we do not need to address the issue of whether it violates Article I § 16. Article I § 16 of the North Carolina Constitution applies only to tax statutes "taxing retrospectively sales, purchases, or other acts previously done . . . ." N.C. Const. art. I § 16.

In summary, we hold that Chapter 1052 is not a tax or revenue statute within the meaning of Article II § 23 of the North Carolina Constitution. Therefore, the trial court did not err in dismissing plaintiff's complaint for failure to state a claim upon which relief can be granted.

Affirmed.

Judge GREENE concurs.

Judge DUNCAN concurred prior to 29 November 1990.