HARRY E. STETSER, DALE E. NELSON, AND MICHAEL DE MONTBRUN, INDIVIDUALLY AND ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS v. TAP PHARMACEUTICAL PRODUCTS, INC.; ABBOTT LABORATORIES; TAKEDA CHEMICAL INDUSTRIES, LTD.; JOHNSON & JOHNSON; ETHICON ENDO-SURGERY, INC.; INDIGO LASER CORPORATION; DAVID JETT; CHRISTOPHER COLEMAN; SCOTT HIDALGO; AND EDDY JAMES HACK, DEFENDANTS

No. COA03-901

(Filed 6 July 2004)

**1. Appeal and Error— appealability—interlocutory order—class certification—writ of certiorari**

Although the trial court's 24 April 2003 order certifying a class action was interlocutory in nature and appellate review of this interlocutory order is usually inappropriate because the order does not affect a substantial right, the Court of Appeals exercised its discretion to grant defendants' petition for writ of certiorari under N.C. R. App. P. 21.

**2. Conflict of Laws— common law fraud—civil conspiracy—tortious concert of action—unfair or deceptive trade practices**

A de novo review revealed that the trial court erred by finding that the common issues of law pertaining to plaintiffs' class action including common law fraud, civil conspiracy, concert of action, and violation of consumer fraud protection statutes are questions of whether defendants violated North Carolina law without regard to the location of those plaintiffs or their state of

1

residence and the case is remanded for further findings on the state law to be applied to the claims involved, because: (1) according to North Carolina's choice of law rules, the law of North Carolina would control the procedural matters in this class action lawsuit such as determining the statute of limitations, but the substantive law of the state where the injury occurred would be applied to plaintiffs' claim for common law fraud, civil conspiracy, and tortious concert of action, as well as determining what damages were available to plaintiffs for any liability resulting from those claims; (2) the substantive law of the state with the most significant relationship or where the injury occurred would control plaintiffs' claims for unfair or deceptive trade practices and determine the damages available; (3) the trial court's application of North Carolina law to a nationwide plaintiff class will pass constitutional muster only if the substantive laws of each of these states does not materially differ from North Carolina's law on plaintiffs' claims, and the trial court failed to make any findings of fact regarding the differences between state laws which potentially would apply according to the conflict of law rules; and (4) the trial court violated due process when it failed to make findings to show that North Carolina's contacts with all of the claims involved in this class action were not so arbitrary as to render unfair application of our law.

**3. Class Actions— factors—common issues of law**

Although defendants contend the trial court erred by finding that plaintiffs met the burden of showing the existence of all the factors necessary to satisfy N.C.G.S. § 1A-1, Rule 23(a) for class certification, the Court of Appeals already reversed and remanded the certification order for other reasons and the trial court's further findings of fact on remand will determine whether common issues of law are present, whether a class action is the appropriate method for disposing of this litigation, and whether class certification is appropriate as to the claims against some or all of defendants.

**4. Appeal and Error— appealability—interlocutory order— denial of motion to amend pleadings—writ of certiorari**

Although defendant appeals from the trial court's 14 April 2003 order denying its motion to amend its answer, the order denying an amendment of the crossclaims for contribution and unfair trade practices is interlocutory and did not affect a substantial right, because: (1) although both crossclaims involve

some of the same parties and possibly some of the same transactions as the underlying lawsuit, the crossclaims deal with the much different issue of whether the individual defendants are liable to the corporate defendants; (2) defendant has not shown that it will be subject to two trials on the same issue or that inconsistent verdicts would result if it was involved in two trials as a result of the trial court's denial of its motion to amend; and (3) even though the Court of Appeals granted defendant's petition for certiorari in order to address the merits of this issue, it cannot be said that the trial court abused its discretion by concluding that amendment of defendant's answer to include crossclaims was untimely and prejudicial.

Appeal by defendants from orders entered 14 April 2003 and 24 April 2003 by Judge Paul L. Jones in New Hanover County Superior Court. Heard in the Court of Appeals 31 March 2004.

*The Blount Law Firm, P.L.L.C., by Marvin K. Blount, Jr. and Marvin K. Blount, III, and Kline & Specter, P.C., by Donald E. Haviland, Jr., pro hac vice, and TerriAnne Benedetto, for plaintiff-appellees.*

*Smith Moore LLP, by J. Donald Cowan, Jr. and Shannon R. Joseph, and Jones Day, by Daniel E. Reidy, pro hac vice, for defendant-appellant TAP Pharmaceutical Products, Inc.*

*Womble, Carlyle, Sandridge, & Rice, PLLC, by Pressly M. Millen, for defendant-appellant Abbott Laboratories.*

*Alston & Bird, LLP, by George O. Winborne, John J. Barnhardt, III, and Lance A. Lawson, and Patterson, Belknap, Webb & Tyler, LLP, by William F. Cavanaugh, Jr., pro hac vice, for defendant-appellants Johnson & Johnson and Ethicon Endo-Surgery, Inc.*

*Stubbs & Perdue, P.A., by George Mason Oliver and Trawick H. Stubbs, Jr., for defendant-appellee Scott Hidalgo.*

*Gary S. Parsons, for the North Carolina Association of Defense Attorneys, amicus curiae.*

*Philip R. Isley, Daniel J. Popeo, pro hac vice, Richard A. Samp, pro hac vice, and George M. Teague, for Washington Legal Foundation and North Carolina Citizens for Business and Industry, amicus curiae.*

MARTIN, Chief Judge.

Defendants TAP Pharmaceutical Products, Inc. (TAP), Abbott Laboratories (Abbott), Johnson & Johnson (Johnson) and Ethicon Endo-Surgery (Ethicon) appeal from the trial court's order certifying plaintiffs' class action lawsuit against defendants. Defendant TAP also appeals a separate order denying its motion to amend its answer to add a crossclaim.

## I.  Facts

Plaintiffs Harry E. Stetser, Dale E. Nelson and Michael de Montbrun filed this action in New Hanover County on 31 December 2001. Plaintiffs allege that defendants inflated the price of the prescription drug Lupron® from 1991 to 2001, thereby defrauding patients and insurance companies in North Carolina and throughout the United States in violation of the federal Prescription Drug Marketing Act (PDMA). Lupron® is used to treat patients with prostate cancer, endometriosis, female infertility, central precocious puberty in children and for preoperative treatment of patients with uterine fibroid-caused anemia. Lupron®, which is only available in liquid form, is administered by injection, usually in a doctor's office or hospital setting.

## A.  Parties

Defendants Abbott and Takeda are the joint owners of defendant TAP. TAP manufactures Lupron®. Takeda is a Japanese corporation, with headquarters in Osaka, Japan. Takeda's United States headquarters is located in Illinois. Abbott and TAP's principal offices are located in Illinois as well. On 3 October 2001, defendant TAP entered a plea of guilty to federal criminal charges stemming from an alleged conspiracy to violate the PDMA by inflating the price of Lupron®. Defendant TAP agreed to repay the federal government for the overcharges to Medicare and other federal programs as a result of the PDMA violations.

Defendant Johnson is headquartered in New Jersey, while its wholly-owned subsidiaries Ethicon and Indigo both have headquarters in Ohio. Indigo markets the "LASEROPTIC Treatment System," a procedure used to treat patients with enlarged prostate glands having a condition known as benign prostatic hyperplasia.

Individual defendants David Jett, Christopher Coleman, and Scott Hidalgo were employees of Indigo during the period at issue in this lawsuit. Defendant Eddy James Hack was the owner of Oncology

Solutions, also known as International Oncology Network, which was a community-based oncology network. Jett and Coleman are residents of North Carolina, while Hidalgo and Hack are residents of the state of Florida. Jett, Coleman, Hidalgo and Hack pled guilty to a criminal information charging them with conspiracy to violate the PDMA in connection with the diversion and marketing of Lupron®.

### B. Members of Plaintiff Class

The named plaintiffs, Harry E. Stetser, Dale E. Nelson and Michael de Montbrun, are all residents of North Carolina. The remaining members of the class are:

> All persons and entities in North Carolina and throughout the United States who paid any portion of the cost of Lupron® based upon, in whole or in part, the published AWP for Lupron® (and/or Zoladex® in LCA states). Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and their legal representatives, heirs, successors, and any governmental entities.

According to plaintiffs, three types of individual patients were disadvantaged by defendants' marketing scheme: (1) Government Assistance Patients (including individuals who relied on government assistance programs to pay, partially or in full, the cost of their medical care, including Medicare, Medicaid, and TRICARE [formerly known as CHAMPUS]); (2) Private Assistance Patients (including patients whose medical care was paid for in part or totally by private health insurance carriers); and (3) No Assistance Patients (individuals who had no insurance or government assistance to cover their medical costs). Although the federal government reached a settlement with several of the defendants, the settlement did not include reimbursement to individuals who were overcharged co-payments for Lupron® as a result of this conspiracy, nor did the settlement include reimbursement of private health insurance carriers for their alleged overpayments. Therefore, the plaintiff class includes individuals with no insurance nor government assistance, individuals who made co-payments for Lupron® while covered by government assistance programs, individuals who made co-payments while covered by private medical insurance, and private health insurance carriers.

### C. Allegations

Plaintiffs allege defendants created an elaborate scheme in order to profit illegally from the sale of Lupron® throughout the United

States. Plaintiffs contend defendants used several methods to inflate the average wholesale price (AWP) of Lupron®. Government programs and private insurers usually set the amount of reimbursement to medical providers based upon the published AWP. The AWP also affects the amount of patients' co-payments made when they receive prescription drugs. The AWP is listed in a pharmaceutical industry publication called the *Red Book*. The plaintiffs allege defendants deliberately reported a higher AWP to the *Red Book*, which increased reimbursement and co-payment amounts for government insurers, private insurers and patients.

Plaintiffs further contend defendants encouraged medical providers to administer Lupron® by selling the drug to them at its actual cost. Therefore, the medical providers were charging patients, private insurance companies and the government the higher AWP while paying a lower actual cost of the drug. The difference between the amount medical providers charged for Lupron® and the cost they paid to acquire the drug accrued to the medical providers. Defendants referred to this difference in internal memos as "spread", "return to practice," "return on investment" or "profit".

Plaintiffs also allege defendants would provide free samples of Lupron® to medical providers and encourage them to seek reimbursement from the government programs, private insurers, or individual patients for those free samples. The misuse of these free samples by medical providers further inflated the AWP by increasing market demand for Lupron®. Also, defendants offered illegal incentives to medical providers to encourage them to use Lupron®, including promises of debt repayment, trips to resort areas, and free consulting services. Plaintiffs allege these actions encouraged physicians to use Lupron® and thereby increased the AWP of Lupron® even further.

The Lupron® price inflation scheme was a direct violation of the PDMA. Several of defendant TAP's employees, as well as several physicians, were indicted for conspiracy to violate the PDMA. As noted above, defendant TAP pled guilty to the federal criminal conspiracy charges, along with individual defendants Jett, Coleman, Hidalgo and Hack.

### D.  Procedural History

Plaintiffs filed this lawsuit on 31 December 2001, asserting claims for unjust enrichment, fraud, civil conspiracy, concert of action/

aiding and abetting and violation of various consumer fraud and antitrust laws. Motions by defendants TAP and Abbott to dismiss, as well as to stay or dismiss the lawsuit pursuant to N.C. Gen. Stat. § 75-12.1, were denied on 13 May 2002, as were motions to dismiss pursuant to Rule 12(b)(6) by defendants Johnson, Ethicon and Indigo.

Defendant TAP filed its answer to the complaint on 29 April 2002. Defendants Johnson, Ethicon and Indigo filed a separate answer on 29 April 2002. Defendant Abbott's answer was filed on 1 May 2002. All defendants asserted affirmative defenses in their answers, but did not include any crossclaims.

On 28 May 2002, plaintiffs asked the trial court to certify a plaintiff class consisting of

> [a]ll persons in North Carolina and throughout the United States who paid any portion of the cost of Lupron®, which cost was based upon, in whole or in part, the published AWP for Lupron®.

The trial court entered a scheduling order for discovery on the question of class certification on 22 August 2002, which it amended on 19 September 2002.

Defendants TAP, Abbott and Johnson filed a motion to compel on 8 November 2002, requesting that the trial court order plaintiffs to submit settlement agreements entered into with the individual defendants Jett, Coleman, Hidalgo and Hack. Plaintiffs' counsel asserted that plaintiffs settled their claims against the individual defendants approximately three months before the motion to compel was filed. Defendants argued that the settlement agreements were final and the case should be removed to federal court. Plaintiffs responded that they could not produce the settlement agreement with the individual defendants because the agreements were not complete. The trial court denied defendants' motion to compel by an order filed 26 November 2002.

Defendants removed the lawsuit to federal court on 26 November 2002, basing their motion on diversity of citizenship. Defendants also moved to sever the individual defendants from the lawsuit. Plaintiffs filed a motion to remand the case to North Carolina state court. The federal district court ruled that the settlement between plaintiffs and the individual defendants was not "final nor binding at the time of removal." Without a "final" settlement, the individual defendants could not be removed from the lawsuit. Unless individual defendant Coleman was removed from the lawsuit, no diversity of

citizenship existed to give the federal court jurisdiction. The district court remanded the lawsuit to North Carolina state court and denied plaintiffs' motion for punitive sanctions in an order filed 20 December 2002.

On 9 January 2003, plaintiffs requested the trial court's preliminary approval of the settlement reached with the individual defendants Jett, Coleman, Hidalgo and Hack. On 3 February 2003, defendant TAP moved for leave to amend its answer to assert a crossclaim against the individual defendants, seeking contribution as well as recovery for tortious interference with contract and unfair trade practices. The trial court denied the motion to amend in an order filed 14 April 2003, stating that no basis existed "for tolling of the time within which Defendant was required to assert its Crossclaim."

On 24 April 2003, the trial court granted plaintiffs' motion for certification of the class action. Defendants TAP, Abbott, Johnson, Ethicon and Indigo immediately appealed.

After the record on appeal was filed 10 July 2003, plaintiffs filed several motions with this Court requesting dismissal of defendants' briefs and sanctions. The trial court's 24 April 2003 order specifically exempted defendant Takeda from its order. Takeda had appealed the trial court's order entered 17 October 2002 denying Takeda's motion to dismiss for lack of jurisdiction, and this Court reversed that decision, holding that North Carolina had no personal jurisdiction over Takeda. *Stetser v. TAP Pharmaceutical Products*, 162 N.C. App. 518, 591 S.E.2d 572 (2004). Therefore, defendant Takeda is not properly considered part of this lawsuit or this appeal.

### E. Similar Lawsuits

On 9 October 2001, in the State Superior Court of New Jersey, Cape May County, named plaintiff Bernard Walker filed an action against defendants TAP, Abbott and Takeda, alleging claims of unjust enrichment, fraud, civil conspiracy/concert of action and violations of consumer protection statutes. Walker alleged that defendants created a price-fixing scheme that inflated the price of Lupron®, affecting Medicare Part B patients. By an order on 29 August 2003, the class certified in New Jersey state court was defined as: "All persons and entities in New Jersey who paid any portion of the cost of Lupron® from 1991 to the present which cost was based, in whole or in part on the AWP for Lupron (and/or Zoladex)." Plaintiff Walker's request for certification of a nationwide plaintiff's class was denied.

**STETSER v. TAP PHARM. PRODS., INC.**

[165 N.C. App. 1 (2004)]

On 28 June 2002, in the Superior Court of Arizona, Maricopa County, named plaintiff Robert J. Swanston filed an action against defendants TAP, Abbott, Takeda, Johnson, Ethicon, Indigo, Jett, Coleman, Hack, and Hidalgo, along with several other individual and corporate defendants. Swanston's complaint sought certification of a class that included "[a]ll persons and entities in Arizona and throughout the United States who paid any portion of the cost of Lupron®, Zoladex®, or other prostate cancer and prescription drugs manufactured, marketed, sold and distributed by Defendants, which cost was based, in whole or in part, upon the published AWPs for these drugs." The complaint set out claims for unjust enrichment, fraud, civil conspiracy, concert of action and violation of consumer protection statutes.

In the Federal District of Massachusetts United States District Court, an action was filed by several corporate plaintiffs, including named plaintiffs Empire Healthchoice, Inc., Blue Cross and Blue Shield of Florida, Inc., Health Options, Inc., and Trigon Insurance Company. This litigation was based upon an alleged illegal marketing and sales scheme for Lupron® by defendants TAP, Abbott and Takeda.

On 12 March 2002, the Circuit Court of the First Judicial Circuit of Williamson County, Illinois certified a national class action lawsuit. The named plaintiff, Acie C. Clark, sued defendants TAP, Abbott, and Takeda based upon improper marketing of Lupron®. The class included: "All individuals or non-ERISA third-party payor entities in the United States who paid any portion of the 20% co-payment or deductible amount for beneficiaries under the Medicare Part B for Lupron® during the period 1993 through the present (the class period)." This class certification has been affirmed by the Illinois Court of Appeals in *Clark v. TAP Pharmaceutical Products, Inc.*, 798 N.E.2d 123 (Ill. App. Ct. 2003).

## II. Interlocutory Certification Order

Defendants argued thirty-five of their thirty-six assignments of error contained in the record on appeal. The remaining assignment of error is deemed abandoned. N.C. R. App. P. 28(a).

[1] Plaintiffs argue that the order certifying the class action is interlocutory and defendants' appeal should be dismissed. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial

court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). "An appeal from a nonappealable interlocutory order is fragmentary and premature and will be dismissed." *Hoots v. Pryor*, 106 N.C. App. 397, 400, 417 S.E.2d 269, 272, *disc. rev. denied*, 332 N.C. 345, 421 S.E.2d 148 (1992) (citation omitted). However, if a trial court enters "a final judgment as to one or more but fewer than all of the claims or parties" and "there is no just reason for delay," the interlocutory appeal can be reviewed. N.C. Gen. Stat. § 1A-1, Rule 54(b). An interlocutory appeal also "may be taken from every judicial order or determination of a judge of a superior or district court, upon or involving a matter of law or legal inference, whether made in or out of session, which affects a substantial right claimed in any action or proceeding[.]" N.C. Gen. Stat. § 1-277(a) (2003); *see also* N.C. Gen. Stat. § 7A-27(d) (2003).

None of the parties here deny that the 24 April 2003 order certifying the class action was interlocutory in nature. However, defendants argue that appellate review of this interlocutory order is appropriate because the order affects a substantial right. In order to determine whether a substantial right has been affected "[e]ssentially a two-part test has developed—the right itself must be substantial and the deprivation of that substantial right must potentially work injury if not corrected before appeal from final judgment." *Travco Hotels v. Piedmont Natural Gas Co.*, 332 N.C. 288, 292, 420 S.E.2d 426, 428 (1992) (quoting *Goldston v. American Motors Corp.*, 326 N.C. 723, 392 S.E.2d 735 (1990)). "If the appellant's rights 'would be fully and adequately protected by an exception to the order that could then be assigned as error on appeal after final judgment,' there is no right to an immediate appeal." *Horne v. Nobility Homes, Inc.*, 88 N.C. App. 476, 477, 363 S.E.2d 642, 643 (1988) (quoting *Bailey v. Gooding*, 301 N.C. 205, 210, 270 S.E.2d 431, 434 (1980)). "Whether a substantial right will be prejudiced by delaying appeal must be determined on a case by case basis." *Stafford v. Stafford*, 133 N.C. App. 163, 165, 515 S.E.2d 43, 45 (citing *Bernick v. Jurden*, 306 N.C. 435, 293 S.E.2d 405 (1982)); *aff'd per curiam*, 351 N.C. 94, 520 S.E.2d 785 (1999).

The denial of class certification has been found to be an interlocutory order that affects a substantial right, meaning that such orders are, in most cases, immediately appealable. *See Frost v. Mazda Motors of Am., Inc.*, 353 N.C. 188, 540 S.E.2d 324 (2000); *Dublin v. UCR, Inc.*, 115 N.C. App. 209, 444 S.E.2d 455, *disc. rev. denied*, 337 N.C. 800, 449 S.E.2d 569 (1994); *Crow v. Citicorp*

*Acceptance Co.*, 79 N.C. App. 447, 339 S.E.2d 437 (1986), *rev'd on other grounds*, 319 N.C. 274, 354 S.E.2d 459 (1987); *Perry v. Cullipher*, 69 N.C. App. 761, 318 S.E.2d 354 (1984). Conversely, "no order allowing class certification has been held to similarly affect a substantial right such that interlocutory appeal would be permitted." *Frost*, 353 N.C. at 193, 540 S.E.2d at 328; *see also Faulkenbury v. Teachers' & State Employees' Retirement System*, 108 N.C. App. 357, 374-75, 424 S.E.2d 420, 429, *aff'd per curiam*, 335 N.C. 158, 436 S.E.2d 821 (1993). However, these general rules are not dispositive of this case, because each interlocutory order must be analyzed to determine whether a substantial right is jeopardized by delaying the appeal. "It is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Waters v. Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978).

Defendants here argue their substantial rights are affected by the trial court's certification order and those rights can only be protected by an immediate appeal. Defendants contend the class certification order violates their due process rights because it applies North Carolina law to plaintiffs' claims throughout the nation. Defendants also argue the order creates the possibility they will face more than one trial on the same factual issues which may result in inconsistent verdicts. Plaintiffs contend defendants' appeal should be dismissed in its entirety because it is premature and no substantial right is affected.

Plaintiffs base their argument for dismissal upon the *Frost* and *Faulkenbury* cases. In both of those cases, our appellate courts found that an interlocutory order allowing class certification did not affect a substantial right. *See Frost*, 353 N.C. at 194, 540 S.E.2d at 328; *Faulkenbury*, 108 N.C. App. at 375, 424 S.E.2d at 429. In *Faulkenbury*, the defendants sought interlocutory review alleging the named plaintiff lacked standing to represent the class, individual issues predominated over common issues, and the class action was not an efficient method to resolve the case because it was "complex, expensive and time consuming." *Faulkenbury*, 108 N.C. App. at 375, 424 S.E.2d at 429. Similarly, the defendants in *Frost* challenged the trial court's interlocutory order granting class certification on grounds the plaintiffs lacked representative capacity and the class claims differed too much to be adjudicated as a class action. *Frost*, 353 N.C. at 194, 540 S.E.2d at 328. The arguments for interlocutory appeal in both cases

were based upon the trial court's application of the class action criteria listed in Rule 23(a) and discussed in *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 354 S.E.2d 459 (1987).

Defendants in this case raise essentially the same arguments about the trial court's application of the class action criteria. However, unlike *Frost* and *Faulkenbury*, here defendants argue the trial court's order violates their due process rights and exposes them to multiple trials with possibly conflicting verdicts. Although defendants' arguments differ from those presented in *Frost* and *Faulkenbury*, we do not find them persuasive. We hold the trial court's interlocutory class certification order did not affect a substantial right.

However, defendants have asked alternatively that this Court treat their appeal as a petition for certiorari according to Rule 21(a)(1). "[A] writ of certiorari will only be issued upon a showing of appropriate circumstances in a civil case where the right to appeal has been lost by failure to take timely action or where no right to appeal from an interlocutory order exists." *Graham v. Rogers*, 121 N.C. App. 460, 464, 466 S.E.2d 290, 293 (1996). We recognize the significance of the issues in dispute in this action; the order which defendants request that we review affects numerous individuals and corporations and involves a substantial amount of potential liability. As a result of the significant impact of this lawsuit, the importance of the issues involved and the need for efficient administration of justice, we exercise our discretion to reach the merits of defendants' appeal and grant the petition for writ of certiorari according to Rule 21.

### III.  Choice of Law

[2]  Defendants assign error to the trial court's finding that the common issues of law pertaining to the class are questions of whether defendants violated North Carolina law. This finding has the effect of applying North Carolina law to class plaintiffs' claims, although the plaintiffs themselves are located throughout the United States. Defendants argue this order ignores North Carolina's conflict of law rules and violates defendants' and out-of-state class plaintiffs' substantive due process rights. Plaintiffs respond that it is appropriate to use North Carolina law because our substantive law does not differ substantially from the law in other states and defendants' purported behavior is unlawful throughout the country.

## A. The Trial Court's Findings

As part of the 24 April 2003 certification order, the trial court made the following findings of fact:

22. There are questions of fact and law common to the Class, which common questions predominate over any questions affecting only individual members. Included among these common questions are the following:

    a. Whether the defendants engaged in the common, fraudulent scheme and conspiracy alleged;

    b. The scope and impact of TAP's guilty plea, and whether the same admits certain aspects of the fraudulent scheme and conspiracy alleged;

    c. Whether and to what extent the defendants' unlawful provision of free samples of Lupron® to doctors, to which TAP pled guilty, caused injury and damages to the Class;

    d. Whether the defendants unlawfully inflated and otherwise misrepresented the AWPs for Lupron® through the *Red Book* and other publications;

    e. Whether the defendants unlawfully promoted the spread between the *Red Book* AWP for Lupron® and the actual cost to doctors as part of a common, fraudulent scheme and conspiracy to promote the sale of Lupron®;

    f. Whether the defendants engaged in a pattern and practice of deceiving and defrauding the Class and concealing their unlawful scheme and conspiracy;

    g. Whether the defendants' fraudulent scheme as alleged constitutes a violation of the North Carolina Consumer Fraud Act, N.C.G.S. §§ 75-1, *et seq.*;

    h. Whether the defendants violated the North Carolina common law of fraud;

    i. Whether the defendants engaged in a conspiracy, concerted action, or aiding and abetting/facilitating in violation of North Carolina law; and

    j. Whether and to what extent the plaintiffs and the members of the Class are entitled to relief and, if so, the nature of such relief.

The trial court did not make any further findings within its order indicating that any state law other than North Carolina's would be applied to any of the plaintiffs' claims, and made no specific findings regarding the choice of law issue. However, it is implicit within the order that North Carolina law would be applied to all plaintiffs and all plaintiffs' claims, without regard to the location of those plaintiffs or their state of residence. This finding effectively works as a conclusion of law that North Carolina law would govern the dispute between the plaintiff class and defendants.

## B. Standard of Review

A trial court's application of North Carolina's conflict of law rules is a legal conclusion which this Court reviews under a *de novo* standard. In addition, defendants argue their due process rights are violated by the trial court's order. "It is well settled that de novo review is ordinarily appropriate in cases where constitutional rights are implicated." *Piedmont Triad Reg'l Water Auth. v. Sumner Hills, Inc.*, 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001). In *de novo* review, "the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence." *Bledsole v. Johnson*, 357 N.C. 133, 138, 579 S.E.2d 379, 381 (2003) (quoting *Turner v. Duke University*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989)).

## C. Conflicts of Law

The allegations contained in the complaint here raised several distinct bases for recovery. The trial court certified four of these issues as common issues of law for the plaintiff class: common law fraud, civil conspiracy, concert of action and violation of consumer fraud protection statutes. To determine the appropriateness of the trial court's application of North Carolina law to all plaintiffs' claims, we must first determine what law should be applied to those claims according to our conflict of law rules.

"Our traditional conflict of laws rule is that matters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim, and remedial or procedural rights are determined by lex fori, the law of the forum. For actions sounding in tort, the state where the injury occurred is considered the situs of the claim." *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988) (citation omitted). Therefore, for the causes of action

**STETSER v. TAP PHARM. PRODS., INC.**

[165 N.C. App. 1 (2004)]

that are normally considered to be torts (common law fraud, civil conspiracy and tortious acting in concert), the law of the state where the plaintiff was injured controls the outcome of the claim.

In contrast, "[a]n action for unfair or deceptive acts or practices is 'the creation of statute. It is, therefore . . . neither wholly tortious nor wholly contractual in nature." *Bernard v. Central Carolina Truck Sales*, 68 N.C. App. 228, 230, 314 S.E.2d 582, 584, *disc. rev. denied*, 311 N.C. 751, 321 S.E.2d 126 (1984) (quoting *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975)). The conflict of law rule regarding the substantive law to be applied to unfair or deceptive trade practices, however, is subject to a split of authority within our courts. One panel of this Court held that "the law of the state having the most significant relationship to the occurrence giving rise to the action" should be applied to the claim. *Andrew Jackson Sales v. Bi-Lo Stores*, 68 N.C. App. 222, 225, 314 S.E.2d 797, 799 (1984) (citing *Michael v. Greene*, 63 N.C. App. 713, 306 S.E.2d 144 (1983)). However, a different panel of this Court criticized that holding, stating the better rule is that "the law of the state where the injuries are sustained should govern" claims under N.C. Gen. Stat. § 75-1.1. *United Virginia Bank v. Air-Lift Associates*, 79 N.C. App. 315, 321, 339 S.E.2d 90, 93 (1986) (quoting *ITCO Corp v. Michelin Tire Corp.*, 722 F.2d 42, 49-50, n.11 (4th Cir. 1983), *cert. denied*, 469 U.S. 1215, 84 L. Ed. 2d 337 (1985)). The *United Virginia* court stated that the "most significant relationship" test, normally applied to claims under the UCC, should not be applied in unfair trade practices claims. *See United Virginia*, 79 N.C. App. at 322, 339 S.E.2d at 94. As a result of this split of authority, which has not been resolved by our Supreme Court, we will analyze the trial court's order under both standards.

Ordinarily, statutes of limitation are considered to be procedural rules for conflicts of law purposes. *See Boudreau*, 322 N.C. at 340, 368 S.E.2d at 857; *Sun Oil Co. v. Wortman*, 486 U.S. 717, 100 L. Ed. 2d 743 (1988). "And the law of the place where rights were acquired or liabilities incurred also governs the award of damages, they being substantive in nature." *Transportation, Inc. v. Strick Corp.*, 16 N.C. App. 498, 500, 192 S.E.2d 702, 704 (1972), *rev'd on other grounds*, 283 N.C. 423, 196 S.E.2d 711 (1973); *see also Ivey v. Rollins*, 250 N.C. 89, 108 S.E.2d 63 (1959) (applying substantive law of state where plaintiff injured to determine damages), *rev'd on other grounds by Greene v. Nichols*, 274 N.C. 18, 161 S.E.2d 521 (1968); *Robinson v. Leach*, 133 N.C. App. 436, 514 S.E.2d 567, *disc. rev. denied*, 350 N.C. 835, 539 S.E.2d 293 (1999).

Therefore, according to North Carolina's choice of law rules, as traditionally applied, the law of North Carolina would control the procedural matters in this class action lawsuit, such as determining the statute of limitations. However, the substantive law of the state where the injury occurred would be applied to the plaintiffs' claims for common law fraud, civil conspiracy and tortious concert of action, as well as determining what damages were available to plaintiffs for any liability resulting from those claims. The substantive law of the state (1) with the most significant relationship or (2) where the injury occurred would control plaintiffs' claims for unfair or deceptive trade practices and determine the damages available.

### D. North Carolina's Substantive Law

In its order, the trial court did not distinguish between the substantive and procedural law of North Carolina, nor did it make any finding or conclusion that North Carolina's substantive law should govern plaintiffs' claims. Instead, the trial court held that the common issues of law which must be found to certify the plaintiffs' class were common issues of North Carolina law. This analysis is an indirect way of stating that plaintiffs' claims would be determined according to North Carolina's substantive law.

Defendants argue the trial court's choice of North Carolina law violates due process rules established by the United States Supreme Court in the recent past. The case of *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 86 L. Ed. 2d 628 (1985), appears to be directly on point in this matter. In *Shutts*, a group of plaintiffs sued an oil company, seeking recovery of interest payments owed to them by the company. *Id.* "The Kansas courts applied Kansas contract and Kansas equity law to every claim in this case, notwithstanding that over 99% of the gas leases and some 97% of the plaintiffs in the case had no apparent connection to the State of Kansas except for this lawsuit." *Shutts*, 472 U.S. at 814-15, 86 L. Ed. 2d at 643-44. However, despite this blanket application of one state's law, the Supreme Court held that "[t]here can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit." *Shutts*, 472 U.S. at 816, 86 L. Ed. 2d at 645.

Applying the holding in *Shutts* to the case at bar, the trial court's unsubstantiated choice to apply North Carolina law to the plaintiffs' claims does not violate defendants' due process rights unless a material difference exists between North Carolina law and the law of another jurisdiction connected with this lawsuit. Because the trial

court certified this class as a nationwide plaintiffs' class, we must therefore assume that plaintiffs are located in each state, meaning that all fifty states are jurisdictions connected with this lawsuit. The trial court's application of North Carolina law to a nationwide plaintiff class will pass constitutional muster only if the substantive laws of each of these states does not materially differ from North Carolina's law on plaintiffs' claims.

## 1. Civil Conspiracy

In North Carolina law, "[t]he elements of a civil conspiracy are: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Privette v. University of North Carolina*, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989) (citing *Jones v. City of Greensboro*, 51 N.C. App. 571, 277 S.E.2d 562 (1981)). A majority of states require proof that the conspirators complete an overt act in furtherance of the conspiracy before they can be found liable.[1] *See AmSouth Bank, N.A. v. Spigener*, 505 So. 2d 1030 (Ala. 1986), *Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.*, 869 P.2d 454 (Cal. 1994); *Nelson v. Elway*, 908 P.2d 102 (Colo. 1995); *Harp v. King*, 835 A.2d 953 (Conn. 2003); *Weishapl v. Sowers*, 771 A.2d 1014 (D.C. 2001); *Fritz v. Johnston*, 807 N.E.2d 461 (Ill. 2004); *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242 (Ill. 1999); *Wright v. Brooke Group, Ltd.*, 652 N.W.2d 159 (Iowa 2002); *State ex rel. Mays v. Ridenhour*, 811 P.2d 1220 (Kan. 1991); *Louisiana v. McIlhenny*, 9 So. 2d 467 (La. 1942); *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038 (Md. 1995); *Adm. Ins. Co. v. Columbia Casualty Ins. Co.*, 486 N.W.2d 351 (Mich. Ct. App. 1992); *Schumacker v. Meridian Oil Co.*, 956 P.2d 1370 (Mont. 1998); *Appeal of Armaganian*, 784 A.2d 1185 (N.H. 2001); *Gosden v. Louis*, 687 N.E.2d 481 (Ohio Ct. App. 1996); *GMH Assocs., Inc. v. Prudential Realty Group*, 752 A.2d 889 (Pa. Super. Ct. 2000); *Frankenbach v. Rose*, ——

---

1. According to a chart presented by plaintiffs and labeled Exhibit 16 MMM, the following states require evidence of an overt act to find liability for civil conspiracy: Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming. This chart was submitted with the affidavit by attorney John Haviland, as part of plaintiffs' motion for class certification. On the chart, North Carolina was erroneously identified as a state that required an overt act to find liability for civil conspiracy.

S.W.3d —— (Tenn. Ct. App. 2004); *Juhl v. Airington*, 936 S.W.2d 640 (Tex. 1996); *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054 (Utah 2002). In contrast, North Carolina law does not require proof that defendant committed an "overt act" in furtherance of the conspiracy; instead a defendant has engaged in a civil or criminal conspiracy upon the making of the agreement. *See State v. Gallimore*, 272 N.C. 528, 158 S.E.2d 505 (1968); *Privette v. University of North Carolina*, 96 N.C. App. 124, 385 S.E.2d 185 (1989). Several states require the additional element of an intent to injure.[2] *See Stillinger & Napier v. Central States Grain Co.*, 82 N.W.2d 637 (Neb. 1957); *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 862 P.2d 1207 (Nev. 1993); *Bonds v. Landers*, 566 P.2d 513 (Ore. 1977); *GMH Assocs. Inc. v. Prudential Realty Group*, 752 A.2d 889 (Pa. Super. Ct. 2000); *Hammond v. Butler, Means, Evins & Brown*, 388 S.E.2d 796 (S.C. 1990), *cert. denied*, 498 U.S. 952, 112 L. Ed. 2d 335 (1990). The trial court made no findings of fact or conclusions of law regarding whether these differences between state laws were material or the effect of North Carolina's conflict of law rules on the trial court's choice of law.

## 2. Common Law Fraud

To show a cause of action for common law fraud in North Carolina, a plaintiff must prove:

> (a) that the defendant made a representation relating to some material past or existing fact; (b) that the representation was false; (c) that when he made it defendant knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (d) that the defendant made the false representation with the intention that it should be acted on by the plaintiff; (e) that the plaintiff reasonably relied upon the representation and acted upon it; and (f) that the plaintiff suffered injury.

*Freese v. Smith*, 110 N.C. App. 28, 34, 428 S.E.2d 841, 846 (1993) (quoting *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568, 374 S.E.2d 385, 391 (1988)). Other jurisdictions require plaintiffs to present evidence of different elements in order to establish a *prima facie* case of common law fraud. Several states do not share North Carolina's requirement that the statement concern a material

---

2. According to Exhibit 16 MMM, Nebraska, Nevada, New York, Oregon, Pennsylvania, Rhode Island, South Carolina and Wisconsin require the additional element of intent to injure.

fact.[3] *See Suffield Dev. Assocs. Ltd. P'shp v. Nat'l Loan Investors, L.P.,* 802 A.2d 44 (Conn. 2002); *Simpson Consulting, Inc. v. Barclays Bank PLC,* 490 S.E.2d 184 (Ga. Ct. App. 1997); *Hawaii's Thousand Friends v. Anderson,* 768 P.2d 1293 (Haw. 1989); *Bulbman, Inc. v. Nevada Bell,* 825 P.2d 588 (Nev. 1992); *Eoff v. Forrest,* 789 P.2d 1262 (N.M. 1990). Several states do not require scienter or knowledge that the statement is false.[4] Some states do not require reasonable reliance on the false statement.[5] *See Laborde v. Dastugue,* 868 So. 2d 228 (La. Ct. App. 2004); *Cortes v. Lynch,* 846 So.2d 945 (La.Ct. App. 2003). Others do not require injury to prove fraud.[6] *See Powell v. D.C. Hous. Auth.,* 818 A.2d 188 (D.C. 2003). The trial court made no findings of fact as to whether these differences in the various states' laws were material.

### 3. Tortious Action in Concert

Plaintiffs also claim liability on a theory of tortious acting in concert or aiding and abetting. The Restatement (Second) of Torts describes this action as follows:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

---

3. According to plaintiffs' chart, included in the record as Exhibit 16 NNN, Connecticut, Delaware, Georgia, Hawaii, Maryland, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Pennsylvania, Rhode Island, South Dakota, Wisconsin and Wyoming do not require the representation to be made about a material fact.

4. According to plaintiffs' Exhibit 16 NNN, the following states do not require scienter or knowledge of falsity: Louisiana, Pennsylvania, Rhode Island, West Virginia, Wisconsin, and Wyoming.

5. According to plaintiffs' Exhibit 16 NNN, the following states do not require proof of justifiable reliance in order to show common law fraud: Illinois, Louisiana, New Hampshire, and South Carolina.

6. According to plaintiffs' Exhibit 16 NNN, the following jurisdictions do not require proof of injury to show common law fraud: District of Columbia, Georgia, Hawaii, Louisiana, New Hampshire, North Dakota, and Vermont.

Restatement (Second) of Torts, § 876 (1979). Our Supreme Court has adopted this section of the Restatement as it is applied to the negligence of joint tortfeasors. *See Boykin v. Bennett,* 253 N.C. 725, 118 S.E.2d 12 (1961)) (holding all defendants liable for death of passenger as a result of negligence in racing automobiles upon a public highway); *also see McMillan v. Mahoney,* 99 N.C. App. 448, 393 S.E.2d 298 (1990) (applying § 876 where child was injured by a negligent act of one defendant but it was impossible to determine which defendant inflicted the injury); *Blow v. Shaughnessy,* 88 N.C. App. 484, 364 S.E.2d 444 (1988). Several states have not adopted the Restatement's definition of action in concert as it is outlined in § 876.[7] The trial court made no findings with respect to the different states' laws or whether those laws were sufficiently similar to North Carolina's law so that application of North Carolina's law was not unfair or arbitrary.

### 4. Consumer Protection Statutes

The trial court held that one of the common issues of law facing the plaintiff class was whether defendants had violated North Carolina's consumer protection statute, N.C. Gen. Stat. § 75-1.1 *et seq.*

N.C. Gen. Stat. § 75-1.1 states that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." G.S. § 75-1.1(a) (2003). "The elements of a claim for unfair and deceptive practices in violation of G.S. § 75-1.1 are: '(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business.' " *Furr v. Fonville Morisey Realty, Inc.,* 130 N.C. App. 541, 551, 503 S.E.2d 401, 408 (1998) (quoting *Spartan Leasing v. Pollard,* 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991)), *appeal dismissed,* 351 N.C. 41, 519 S.E.2d 314 (1999); *see First Atl. Mgt. Corp. v. Dunlea Realty Co.,* 131 N.C. App. 242, 507 S.E.2d 56 (1998). "To prevail on this claim, deliberate acts of deceit or bad faith do not have to be shown." *Boyd v. Drum,* 129 N.C. App. 586, 593, 501 S.E.2d 91, 97 (1998) (citation omitted), *aff'd per curiam,* 350 N.C. 90, 511 S.E.2d 304 (1999). This Court has held that "it is not necessary for the plaintiff to show fraud, bad faith, deliberate or knowing acts of deception, or actual deception" but "plaintiff must . . . show that the acts complained of possessed the tendency or capacity

---

7. Exhibit 16 OOO, presented by plaintiffs, lists Colorado, Indiana, New Mexico, Utah, Vermont, West Virginia and Wyoming as jurisdictions that have not adopted Restatement (Second) Torts § 876 or its equivalent.

to mislead, or created the likelihood of deception." *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 452-53, 279 S.E.2d 1, 7 (1981); *see Ken-Mar Finance v. Harvey*, 90 N.C. App. 362, 368 S.E.2d 646, *disc. rev. denied*, 323 N.C. 365, 373 S.E.2d 545 (1988). If the trial court finds a violation of N.C. Gen. Stat. § 75-1.1 and "if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict." N.C. Gen. Stat. § 75-16 (2003).

The North Carolina consumer protection statute is based upon the Federal Trade Commission Act (FTCA), 15 U.S.C. § 45(a)(1). *See Henderson v. United States Fidelity & Guaranty Co.*, 346 N.C. 741, 488 S.E.2d 234 (1997). Many states have adopted a similar version of the FTCA.[8] *See* Ariz. Rev. Stat. Ann. § 44-1522 (2003); Ga. Code Ann. §§ 10-1-391, 10-1-393 (2000); Tex. Bus. & Com. Code Ann. § 17.46 (2002); Utah Code Ann. § 13-11-4 (2001); Vt. Stat. Ann. tit. 9, § 2453 (1993). Other states have based their laws upon a consumer protection statute created by the Uniform Commission on State Laws which lists specific types of unfair and deceptive practices or acts.[9] *See* Ark. Code Ann. § 4-88-107 (2004); Cal. Civ. Code § 1770 (1998); 815 Ill. Comp. Stat. Ann. 510/2 (1999). Although North Carolina law does not require scienter on the part of the defendant in a G.S. § 75-1.1 claim, other states do.[10] *See* Ark. Code Ann. § 4-88-107 (2004); 815 Ill. Comp. Stat. Ann. 510/2 (1999); Utah Code Ann. § 13-11-4 (2001). North Carolina's law does not require reliance by the plaintiff in order to successfully pursue a claim under G.S. § 75-1.1, while some states do require reliance.[11] *See* Ariz. Rev. Stat. Ann. § 44-1522 (2003); Ga. Code

---

8. According to a chart included in the Record on Appeal as Exhibit 16 LLL, Alabama, Arizona, Arkansas, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Iowa, Kentucky, Louisiana, Maine, Massachusetts, Missouri, Montana, Nebraska, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and Wyoming all have consumer protection statutes based upon the FTCA.

9. Jurisdictions with "laundry list" statutes based on the Commission on Uniform State Laws' model are Alabama, Alaska, Arkansas, California, Colorado, District of Columbia, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Maryland, Michigan, Minnesota, Mississippi, Nevada, New Hampshire, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Utah, Virginia, West Virginia, Wisconsin and Wyoming, according to Exhibit 16 LLL.

10. According to plaintiffs' chart in Exhibit 16 LLL, Arkansas, Colorado, Illinois, Iowa, Kansas, South Dakota, Utah, and Wisconsin require proof of scienter to pursue a claim under their respective state consumer fraud laws.

11. According to plaintiffs' Exhibit 16 LLL, Arizona, Georgia, Indiana, Texas, Wisconsin and Wyoming require the element of reliance by the plaintiff.

Ann. § 10-1-393 (2000). In North Carolina, the plaintiff is allowed to recover treble damages. *See* G.S. § 75-1.1. Other states also allow equitable relief.[12] *See* Ariz. Rev. Stat. Ann. § 44-1528 (2003); Ark. Code Ann. §§ 4-88-104, 4-88-113 (2004); Cal. Civ. Code § 1780 (1998); Ga. Code Ann. § 10-1-399 (2000); 815 Ill. Comp. Stat. Ann. 510/3 (1999); Utah Code Ann. § 13-11-19 (2001). Some states allow plaintiffs to recover punitive damages.[13] *See* Cal. Civ. Code § 1780 (1998); Ga. Code Ann. § 10-1-399 (2000), Vt. Stat. Ann. tit. 9, § 2461 (1993); *Conseco Finance Servicing Corp. v. Hill,* 556 S.E.2d 468 (Ga. Ct. App. 2001). Others states do not allow the recovery of treble damages.[14] *See* Ariz. Rev. Stat. Ann. § 44-1528 (2003); Ark. Code Ann. § 4-88-113 (2004); Cal. Civ. Code § 1780 (1998); 815 Ill. Comp. Stat. Ann. 510/3 (1999); Utah Code Ann. § 13-11-19 (2001). The trial court made no findings of fact relating to the differences between these state laws, which potentially would apply according to the conflicts of law rules, and whether those differences were insignificant.

### E. Due Process

The final step in the process of determining which state law should apply to the individual claims of the class action plaintiffs is the question of whether the application of the chosen substantive state law will violate due process. "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co v. Hague,* 449 U.S. 302, 312-13, 66 L. Ed. 2d 521, 531 (1981); *see also Phillips Petroleum Co.*

---

12. According to Exhibit 16 LLL, Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, West Virginia, Wisconsin and Wyoming allow the remedy of equitable relief.

13. Exhibit 16 LLL lists Arkansas, California, Connecticut, Delaware, District of Columbia, Georgia, Idaho, Illinois, Kentucky, Missouri, Nebraska, Oregon, Rhode Island and Vermont as jurisdictions that allow the recovery of punitive damages in consumer fraud protection claims.

14. According to plaintiffs' chart, Arizona, Arkansas, California, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Kentucky, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, Ohio, Oklahoma, Oregon, Rhode Island, South Dakota, Utah, Vermont, West Virginia, Wisconsin and Wyoming do not allow for recovery of treble damages as North Carolina does.

*v. Shutts*, 472 U.S. 797, 86 L. Ed. 2d 628 (1985). "[I]f a State has only an insignificant contact with the parties and the occurrence or transac-tion, application of its law is unconstitutional." *Allstate*, 449 U.S. at 310-11, 66 L. Ed. 2d at 529.

The "contacts" required to meet the due process standard for purposes of choice of law are different from the "contacts" necessary to give a trial court personal jurisdiction over the case:

> The issue of personal jurisdiction over plaintiffs in a class action is entirely distinct from the question of the constitutional limitations on choice of law; the latter calculus is not altered by the fact that it may be more difficult or more burdensome to comply with the constitutional limitations because of the large number of transactions which the State proposes to adjudicate and which have little connection with the forum.

*Shutts*, 472 U.S. at 821, 86 L. Ed. 2d at 648. "Neither the Due Process Clause nor the Full Faith and Credit Clause requires [a state] 'to substitute for its own [laws], applicable to persons and events within it, the conflicting statute of another state,' but [a state] 'may not abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them.' " *Shutts*, 472 U.S. at 822, 86 L. Ed. 2d at 649 (internal citations omitted) (quoting *Pacific E. Ins. Co. v. Industrial Acci. Com.*, 306 U.S. 493, 502, 83 L. Ed. 940, 945 (1939) and *Home Ins. Co. v. Dick*, 281 U.S. 397, 410, 74 L. Ed. 926, 935 (1930)). As the Supreme Court has stated, "the States need not, and in fact do not, provide [consumer] protection in a uniform manner. . . . The result is a patchwork of rules representing the diverse policy judgments of lawmakers in 50 states." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 569-70, 134 L. Ed. 2d 809, 822-23 (1996). "Differences across states may be costly for courts and litigants alike, but they are a fundamental aspect of our federal republic and must not be overridden in a quest to clear the queue in court." *In re Bridgestone/Firestone*, 288 F.3d 1012, 1020 (7th Cir. 2002) (rejecting certification of a nationwide class action lawsuit).

Plaintiffs argue that *Clark v. TAP Pharmaceutical Products, Inc.*, 798 N.E.2d 123 (Ill. App. Ct. 2003) should persuade this Court to allow the class certification to stand. *Clark* involves issues similar to those in the present appeal and a nationwide plaintiff class. In the Illinois case, the trial court certified a plaintiff class composed of "[a]ll individuals or non-ERISA third-party payor entities in the United States who paid any portion of the 20% copayment or deductible amount for

beneficiaries under the Medicare Part B for Lupron® during the period 1993 through the present (the class period)." *Clark*, 798 N.E.2d at 127. The *Clark* court held that application of the Illinois Consumer Fraud Act to all of the plaintiffs' claims did not violate due process or Illinois choice of law principles. *Id.* at 129. However, *Clark* differs from this case in several significant aspects. The *Clark* court held that Illinois had significant contacts to the litigation, which prevented the application of its law from being arbitrary or unfair. The defendants named in *Clark* were all headquartered in Illinois; therefore, the court reasoned that any illicit pricing scheme originated in Illinois, providing Illinois with a legitimate interest in and significant contact with the litigation. *Clark*, 798 N.E.2d at 130. In addition, Illinois's choice of law rule, according to its consumer protection statute, is the "most significant relationship" test. *Clark*, 798 N.E.2d at 130. The North Carolina class certification involved claims that, according to our choice of law rules, would typically apply the law of the state where the injury occurred. These differences make *Clark* readily distinguishable from the present appeal.

We find the New Jersey superior court's reasoning and holdings more persuasive on this matter. *See Walker v. TAP Pharmaceuticals Products, Inc.,* No. 682-01, slip op. (Cape May County Ct. (2003)). Plaintiff Walker, on behalf of the class, argued that a nationwide plaintiffs class should be certified, and that the New Jersey court should apply New Jersey law to all of the claims involved. *Walker*, slip op. at 4. The *Red Book*, the pharmaceutical industry publication that defendants allegedly used to further their conspiracy, is published in New Jersey. *Id.* Walker argued that since the defendants used the *Red Book* to publish their accelerated AWP, which was the central part of the alleged conspiracy, New Jersey had a significant contact to the litigation so that application of its laws was not arbitrary or unfair. *Walker*, slip op. at 8-9. The New Jersey court disagreed that this factor amounted to a significant contact allowing for the application of New Jersey law. *Id.* In addition, the New Jersey court found:

> Alternatively, plaintiff submits that, notwithstanding a lack of significant contact or aggregating of contacts, New Jersey Law may be applied nationally. In response to Defendants' many challenges to the application of New Jersey Law on a national basis, Plaintiff argues that the applicable New Jersey laws do not present a material conflict with other jurisdictions. In support of this proposition Plaintiff sets forth numerous similarities. Defense points to numerous differences in the Consumer Fraud Laws and Common

Law Fraud Laws. Plaintiff fails to persuade this Court that there is not a conflict based on the purported similarities set out in the argument. The record as developed is simply inadequate to make the required rigorous analysis to satisfy the predominance and superiority issues relative to a national class.

*Walker*, slip op. at 9. For these reasons, the New Jersey court refused to certify a nationwide class of plaintiffs. Instead, the New Jersey court limited application of New Jersey law to a class of plaintiffs who were New Jersey residents.

Here, the trial court made no findings of fact about the significance of North Carolina's contacts with the subject matter of the litigation. Although the trial court has personal jurisdiction over the defendants (with the exception of defendant Takeda), this does not mean necessarily that North Carolina law can be applied to all of plaintiffs' claims without a violation of defendants' rights to due process. Because this class is composed of plaintiffs nationwide, the remaining forty-nine states' laws, as well as the law of the District of Columbia, must be analyzed to determine whether it conflicts with the law of North Carolina.

According to the plaintiffs' own evidence, differences exist between North Carolina law and the law of the other jurisdictions on each substantive claim presented by plaintiffs. Our conflict of law rules would require the North Carolina court to apply other jurisdictions' substantive law unless North Carolina's law is sufficiently similar. However, the trial court made no findings of fact to show that North Carolina has similar law to all other jurisdictions on all claims, so that no actual conflict of law exists. The trial court also did not make a conclusion of law to show that despite a conflict of law, North Carolina law should apply to an injury claim that occurred in another jurisdiction because North Carolina had the most significant interest in that litigation or that all of the injuries forming the basis of these claims occurred in North Carolina. The trial court did not make findings to show that North Carolina's contacts with all of the claims involved in this class action were not so arbitrary as to render unfair application of our law. The evidence regarding the differences between the laws of the various jurisdictions nationwide, standing alone, does not support the trial court's conclusion that the issues of law common to the class were North Carolina laws. On its face, the trial court's class certification order appears to violate defendants' due process rights. Allowing the class to proceed with its action as certified would result in a judgment that would not be recognized by

other courts according to the Full Faith and Credit Clause, because our state court judgment may be void as to certain plaintiffs. "Generally, when a trial court fails to make required findings of fact, the case must be remanded to the trial court for entry of findings. However, when the evidence in the record as to a finding is not controverted, remand is not required." *Pitts v. American Sec. Ins. Co.*, 144 N.C. App. 1, 18, 550 S.E.2d 179, 192 (2001) (citation omitted), *aff'd by an equally divided court*, 356 N.C. 292, 569 S.E.2d 647 (2002). As a result, we must reverse the trial court's order certifying the class action and remand for further findings on the state law to be applied to the claims involved.

### IV. Rule 23 Certification

**[3]** Defendants TAP and Abbott, joined by defendants Johnson and Ethicon, argue that the trial court improperly found that plaintiffs met the burden of showing the existence of all the factors necessary to satisfy Rule 23(a). The requirements for a class action under Rule 23(a) are:

1. The existence of a class

2. The class members within the jurisdiction of the court must adequately represent any class members outside the jurisdiction of the Court;

3. The class must be so numerous as to make it impracticable to bring each member before the court;

4. More than one issue of law or fact common to the class should be present;

5. The party representing the class must fairly insure the representation of all class members;

6. Adequate notice must be given to the class members.

*Crow v. Citicorp Acceptance Co.*, 79 N.C. App. 447, 448-49, 339 S.E.2d 437, 438 (1986), *rev'd on other grounds*, 319 N.C. 274, 354 S.E.2d 459 (1987); *see Perry v. Union Camp Corp.*, 100 N.C. App. 168, 394 S.E.2d 681 (1990). "Class actions should be permitted where they are likely to serve useful purposes such as preventing a multiplicity of suits or inconsistent results. The usefulness of the class action device must be balanced, however, against inefficiency or other drawbacks." *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 284, 354 S.E.2d 459, 466 (1987); *see Pitts v. American Sec. Ins. Co.*, 144 N.C. App. at 11, 550 S.E.2d at 188.

**STETSER v. TAP PHARM. PRODS., INC.**

[165 N.C. App. 1 (2004)]

We reversed and remanded the trial court's order certifying the class action for the reasons stated in Part III of this opinion. That class certification order contained the trial court's findings of fact and conclusions of law pertaining to Rule 23(a). The trial court's further findings of fact will determine whether common issues of law are present, as well as whether a class action is the appropriate method for disposing of this litigation and, if so, the composition of the plaintiff class. "If the prerequisites to a class action are established on remand, the decision whether a class action is superior to other available methods for the adjudication of this controversy continues to be a matter left to the trial court's discretion." *Crow*, 319 N.C. at 284, 354 S.E.2d at 466. Therefore, we reverse this portion of the trial court's order and remand for reconsideration according to the findings of fact and conclusions of law reached upon remand.

## V. Johnson's Additional Argument

Defendants Johnson and Indigo, in addition to joining defendant TAP and Abbott's arguments, present one additional argument. Defendants Johnson and Indigo argue that the class certification was clearly erroneous as applied to them. Johnson and Indigo contend that their only connection to the litigation is the alleged actions of their former employees, individual defendants Jett, Coleman and Hidalgo. Johnson and Indigo assert that no class plaintiff has been injured by their actions, no common issue of law exists as applied to them because they took no actions to harm plaintiffs, and that the class action mechanism is inappropriate as applied to them. Plaintiffs counter that they have presented sufficient evidence from which the trial court could have concluded that defendants Johnson and Indigo were involved in the price inflation scheme and furthered the conspiracy by corporate actions. Our previous holding that the trial court's findings of fact and conclusions of law were not sufficient renders discussion of this assignment of error moot. The trial court must first make findings of fact and conclusions of law to support its choice of law. After these findings and conclusions are completed, the trial court must re-weigh factors necessary to determine whether class certification is appropriate as to the claims against some or all of the defendants.

## VI. Motion to Amend

[4] Defendant TAP also appeals from the trial court's 14 April 2003 order denying TAP's motion to amend its answer. An order denying a motion to amend the pleadings is interlocutory and not immediately

**STETSER v. TAP PHARM. PRODS., INC.**

appealable. *See Buchanan v. Rose*, 59 N.C. App. 351, 296 S.E.2d 508 (1982). However, when a motion to amend a party's compulsory counterclaim is denied, the order is immediately appealable because it affects a substantial right. *See Hudspeth v. Bunzey*, 35 N.C. App. 231, 241 S.E.2d 119, *disc. rev. denied*, 294 N.C. 736, 244 S.E.2d 154 (1978). Defendant TAP sought to amend its answer to add several cross-claims against the individual defendants. TAP's amendment was in response to a settlement agreement between the individual defendants and plaintiffs, which caused the dismissal of the action against the individual defendants. Therefore, the order denying the amendment of the crossclaim is interlocutory.

## A. Interlocutory Order

Defendant TAP argues that the amendment order is immediately appealable because it affects a substantial right. TAP contends the denial of its motion affects TAP's right to avoid two trials on the same issues, which may subject it to inconsistent verdicts.

In *Green v. Duke Power Co.*, 305 N.C. 603, 290 S.E.2d 593 (1982), the North Carolina Supreme Court analyzed a similar argument. After observing that "avoidance of one trial is not ordinarily a substantial right", the Court held that " 'the right to avoid the possibility of two trials on the same issues can be . . . a substantial right.' " *Green*, 305 N.C. at 608, 290 S.E.2d at 596 (citation omitted); *see Allen v. Sea Gate Assn.*, 119 N.C. App. 761, 460 S.E.2d 197 (1995); *Hartman v. Walkertown Shopping Center*, 113 N.C. App. 632, 439 S.E.2d 787, *disc. rev. denied*, 336 N.C. 780, 447 S.E.2d 422 (1994); *Hoots v. Pryor*, 106 N.C. App. 397, 417 S.E.2d 269 (1992). The right to avoid two trials has been explained in greater detail by this Court:

> This general proposition is based on the following rationale: when common fact issues overlap the claim appealed and any remaining claims, delaying the appeal until all claims have been adjudicated creates the possibility the appellant will undergo a second trial of the same fact issues if the appeal is eventually successful. This possibility in turn "creates the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue."

*Davidson v. Knauff Ins. Agency*, 93 N.C. App. 20, 25, 376 S.E.2d 488, 491 (citations omitted), *disc. review denied*, 324 N.C. 577, 381 S.E.2d 772 (1989). The test for this substantial right essentially has two parts. First, this Court must decide whether the other claims

asserted are based upon the same facts and issues. If that question is answered affirmatively, then this Court must decide whether this appeal can wait until the full trial has taken place or whether such delay will prejudice defendants by exposing them to inconsistent verdicts.

Defendant TAP argues that its crossclaims for contribution and unfair trade practices against the individual defendants are based upon the same factual issues as plaintiffs' claims against all defendants.[15] We disagree with TAP's argument. TAP's crossclaim for contribution is dependant upon a finding that defendants, as a group, are liable to the plaintiff class. TAP's crossclaim based upon unfair trade practices is not dependant upon a finding that defendants are liable to plaintiffs. Although both crossclaims involve some of the same parties and possibly some of the same transactions as the underlying lawsuit, the crossclaims deal with the much different issue of whether the individual defendants are liable to the corporate defendants.

Defendants also argue that separate trials may produce inconsistent verdicts. An inconsistent verdict can only occur if the same issue is involved in two trials. Here, all defendants may be found liable in one trial, but individual defendants may be found not liable to the corporate defendants in a second trial. Those are not necessarily inconsistent verdicts, but may reflect instead that the jury found the corporate defendants liable for the damage to plaintiffs on a theory other than vicarious liability. If all defendants are found not liable in the first trial, no second trial for the crossclaim of contribution need take place as the issue of unfair trade practice will have been decided and further trial will be precluded by collateral estoppel. Therefore, defendant TAP has not shown that it would be subject to two trials on the same issue or that inconsistent verdicts would result if it was involved in two trials as a result of the trial court's denial of its motion to amend. Accordingly, TAP has not demonstrated that a substantial right is affected and this interlocutory order is not immediately appealable.

However, defendant TAP has requested that we view its appeal alternatively as a petition for writ of certiorari under Rule 21(a)(1) in the event we find no grounds to review the interlocutory order. *See* N.C. R. App. P. 21(a)(1). We recognize that defendant TAP has no

---

15. Defendant TAP acknowledged in its brief that the crossclaim for tortious interference with contractual relations was not based upon the same factual issues.

appeal of right, but in consideration of the complexity of this appeal, in the interest of the administration of justice and because we have granted certiorari as to the other interlocutory issues in this appeal, we grant defendant TAP's petition for writ of certiorari in order to address the merits of TAP's argument.

### B. Amendment

Denial of a motion to amend pleadings is a matter soundly within the discretion of the trial court. *See North River Ins. Co. v. Young*, 117 N.C. App. 663, 453 S.E.2d 205 (1995). The trial court's decision regarding a party's motion to amend the pleadings will not be disturbed on appeal unless an abuse of discretion is shown. *Dept. of Transportation v. Bollinger*, 121 N.C. App. 606, 468 S.E.2d 796 (1996).

Defendant TAP sought to amend its answer to add a crossclaim against the individual defendants. Crossclaims are described as follows:

A pleading may state as a crossclaim any claim by one party against a coparty arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such crossclaim may include a claim that the party against whom it is asserted is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant.

N.C. Gen. Stat. § 1A-1, Rule 13(g) (2003). The Rules of Civil Procedure outline defendant TAP's ability to amend its answer as follows:

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 30 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within 30 days after service of the amended pleading, unless the court otherwise orders.

N.C. Gen. Stat. § 1A-1, Rule 15(a) (2003). Because defendant TAP sought to amend its answer outside of the thirty day time period and without consent of plaintiffs or the individual defendants, TAP could

only amend its answer by leave of the trial court. Rule 15(a) contemplates liberal amendments to the pleadings, which should always be allowed unless some material prejudice is demonstrated. *See Mauney v. Morris*, 316 N.C. 67, 340 S.E.2d 397 (1986); *Saintsing v. Taylor*, 57 N.C. App. 467, 291 S.E.2d 880, *disc. rev. denied*, 306 N.C. 558, 294 S.E.2d 224 (1982). Some of the reasons for denying a motion to amend include undue delay by the moving party, unfair prejudice to the non-moving party, bad faith, futility of the amendment, and repeated failure to cure defects by previous amendments. *See Delta Env. Consultants of N.C. v. Wysong & Miles Co.*, 132 N.C. App. 160, 510 S.E.2d 690, *disc. rev. denied*, 350 N.C. 379, 536 S.E.2d 70 (1999). In its 14 April 2003 order, the trial court stated that defendant TAP's motion to amend was "untimely and prejudicial." The trial court did not make any further factual findings to support its order.

TAP correctly argues that there is no time limit for amendments according to Rule 15. However, the trial court, in its discretion, may consider the relative timing of the proposed amendment in relation to the progress of the lawsuit. Rule 15 indicates the legislature's attempt to set up amendment rules to ensure the fairness of litigation, e.g. allowing one amendment before a responsive pleading is served or before the matter is placed on the trial calendar. In this case, plaintiffs point out that the factual allegations giving rise to defendant TAP's crossclaim had been known by TAP for some time. The complaint in this case was filed 31 December 2001, while defendant TAP's answer was filed 29 April 2002. The motion to amend was not filed until 4 February 2003. The individual defendants reached a settlement agreement on 8 January 2003, meaning that individual defendants would be discharged from the case. Defendant TAP argues that, in light of the potential dismissal of individual defendants, the motion to amend was timely and necessary to protect defendants' contribution claims. We disagree. Although the upcoming dismissal of the individual defendants from the lawsuit provided defendant TAP with an incentive to assert its crossclaims against the individual defendants to protect itself, this does not render those assertions timely.

In addition to the issue of delay and timeliness, the trial court held that defendant TAP's motion to amend should be denied because it was prejudicial. Defendant TAP argues that no possible prejudice could flow to plaintiffs or the individual defendants because all of the issues involved in its crossclaim were identical to the issues in the underlying lawsuit. Therefore, defendant TAP argues, no further discovery would be necessary. However, as noted in our discussion of

whether this interlocutory appeal affected TAP's substantial right to avoid two trials on the same issues, we hold that the issues of liability in plaintiffs' claims against defendants are separate and distinct from the issues of liability between the corporate defendants and the individual defendants. Different evidence would be necessary to support these additional legal claims, which could involve more discovery for the parties, slow the litigation process, and present a more unwieldy litigation for the trial court to administrate. We cannot say that the trial court abused its discretion in concluding that amendment of defendant TAP's answer to include crossclaims was prejudicial.

For the reasons stated above, the trial court's 14 April 2003 order denying defendant TAP's motion to amend is affirmed. However, the 24 April 2003 order certifying the class action is reversed, and this action is remanded to the trial court for further findings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

Judges BRYANT and ELMORE concur.